DELMAN ET AL., APPELLANTS, *v.*
CITY OF CLEVELAND HEIGHTS ET AL., APPELLEES.

[Cite as Delman *v.* Cleveland Heights (1989), 41 Ohio St. 3d 1.]

(No. 87-1934—Submitted January 11, 1989—Decided February 2, 1989.)

*Lustig, Icove & Lustig Co., L.P.A., Robert M. Lustig* and *Edward A. Icove,* for appellants.

*John H. Gibbon,* law director, for appellees.

H. Brown, J. The parties have stipulated that genuine issues of material fact exist as to whether the city was negligent in conducting the point-of-sale inspections. Therefore, the issue we must resolve is whether the city and its employees owe a duty to the Delmans to act reasonably when conducting and reporting point-of-sale inspections. Pursuant to our recent decision in *Sawicki* v. *Ottawa Hills* (1988), 37 Ohio St. 3d 222, 525 N.E. 2d 468, we hold that the city does not owe such a duty.

A public official's statutory duty does not give rise to a private duty unless a special duty or relationship to the plaintiff is established. *Sawicki, supra.* In order to demonstrate a special duty or relationship, a plaintiff must show, *inter alia,* that the municipality assumed an affirmative duty to act on the plaintiff's behalf and that the plaintiff justifiably relied on the municipality's action. *Sawicki, supra,* at paragraph four of the syllabus. These are the principles which guide our determination.

Prior to the enactment of the point-of-sale ordinance, the city of Cleveland Heights did not inspect single-family residences. When the city enacted the point-of-sale ordinance it also began systematic inspections of single-family residences. Since the point-of-sale ordinance is directed toward sellers and purchasers of property, the Delmans contend that a special relationship has been established between the city and that class. The or-

dinance was designed, they argue, to protect the interests of home purchasers, and Cleveland Heights assumed an affirmative duty to act on behalf of home purchasers by enacting and enforcing the ordinance. We disagree.

The primary purpose of building codes and ordinances is "to secure to the municipality as a whole the benefits of a well-ordered municipal government, or, as sometimes expressed, to protect the health and secure the safety of occupants of buildings, and not to protect the personal or property interests of individuals." (Footnotes omitted.) 7 McQuillin, The Law of Municipal Corporations (3 Ed. 1981) 479, Section 24.507. The Cleveland Heights point-of-sale ordinance is consistent with this purpose. In its preamble, the ordinance states that it was enacted to "* * * protect the safety, health and welfare of the residents of the City * * *." Cleveland Heights Ordinance No. 69-1977, adding new Chapter 1329 to the city's building code.

More specifically, inspection ordinances such as point-of-sale ordinances are enacted to maintain and enhance housing standards. In passing upon the constitutionality of a point-of-sale ordinance enacted by the city of Cincinnati, this court noted that "[t]he ordinance bears witness to the city's attempt to preserve the quality of its existing housing stock * * *." *Wilson* v. *Cincinnati* (1976), 46 Ohio St. 2d 138, 142, 75 O.O. 2d 190, 193, 346 N.E. 2d 666, 669. Similarly, in describing a point-of-sale ordinance enacted by the city of Shaker Heights, a court stated that: "This ordinance was enacted solely to protect the health and safety of the residents of the city and to preserve the housing stock in the community. * * * It was not intended, nor should it be construed, to create any duty to any particular resident,

whether he or she be purchaser or seller." *Sowell* v. *Trotter* (June 30, 1986), Cuyahoga App. No. 49681, unreported. The particular advantage of point-of-sale inspection over other types of inspection is that it is conducted at a time when money is available and persons with the responsibility to make corrections are under pressure to do so.

The operation of Cleveland Heights' point-of-sale ordinance contradicts the claim that it was enacted to protect home purchasers. Though the ordinance requires that notice of defects be given to the purchaser, it also requires that the defects be corrected and the house brought up to code within a certain period of time, which can and often will extend beyond the date on which title passes. Thus, remedial corrections can be accomplished by the seller before the sale, by the purchaser subsequent to the transfer of title or by any means which the parties choose. The result is that the burden of making corrections can, depending upon the agreement between the parties, fall upon either the seller or the purchaser.

Moreover, the ordinance provides, in language which is made a part of the certificates of inspection, that: "In issuing a Certificate of Inspection, the City does not insure or guarantee to the holder thereof, to his assignee or other interested party, that there are no violations of the Codified Ordinances of the City of Cleveland Heights or statutes and regulations of the State of Ohio." This disclaimer warns the purchaser not to rely on the city's inspection in making the decision to purchase a particular home. The disclaimer also negates the Delmans' claim that they justifiably relied on the city's inspection.

According to the Delmans, no evidence shows that they were on

notice as to the disclaimer prior to purchasing the home. However, the record does not support this claim. In a sworn affidavit Bruce Delman stated, "[i]n purchasing the property we relied upon the inspection reports of September 29, 1978 and April 11, 1979, copies of which are attached * * *." The disclaimer was conspicuously printed on the report of September 29, 1978, which was the original inspection report.[1]

Even in the absence of a disclaimer, an apparent majority of courts which have reached the issue refuse to impose upon a municipality a duty of care to private individuals for building inspections. See, e.g., *Modlin* v. *Miami Beach* (Fla. 1967), 201 So. 2d 70; *Cracraft* v. *St. Louis Park* (Minn. 1979), 279 N.W. 2d 801; *Rich* v. *Mobile* (Ala. 1982), 410 So. 2d 385; *Dinsky* v. *Framingham* (1982), 386 Mass. 801, 438 N.E. 2d 51. See, also, Comment, Municipal Liability for Negligent Building Inspections — Demise of the Public Duty Doctrine? (1980), 65 Iowa L. Rev. 1416, 1428, and the cases cited therein. Lower Ohio courts are in accord. See, e.g., *Shelton* v. *Indus. Comm.* (1976), 51 Ohio App. 2d 125, 5 O.O. 3d 286, 367 N.E. 2d 51, syllabus; *Taylor* v. *Continental Cas. Co.* (1945), 75 Ohio App. 299, 304, 31 O.O. 53, 55, 61 N.E. 2d 919, 921. See, also, *Texaus Investment Corp.* v. *Haendiges* (C.A. 6, 1985), 761 F. 2d 252 (applying Ohio law).

Finally, we reject the argument that the city can be found liable for negligently misrepresenting the condition of the property. The elements of negligent misrepresentation are as follows: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by ·their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Emphasis added.) 3 Restatement of the Law 2d, Torts (1965) 126-127, Section 552(1), applied by this court in *Gutter* v. *Dow Jones, Inc.* (1986), 22 Ohio St. 3d 286, 22 OBR 457, 490 N.E. 2d 898, and *Haddon View Investment Co.* v. *Coopers & Lybrand* (1982), 70 Ohio St. 2d 154, 24 O.O. 3d 268, 436 N.E. 2d 212. As previously discussed, the Delmans were not justified in relying upon the city's inspection.

For the foregoing reasons, we hold that a municipality and its employees, in conducting inspections of real estate for violations of the city code pursuant to a point-of-sale inspection ordinance, do not owe a duty of due care to a purchaser or seller of such real estate. We affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.

---

[1] Section 1 of the ordinance requires the seller to present the certificate, or an exact copy thereof, to any prospective purchaser prior to completing the sale and to deposit in escrow a statement from the purchaser acknowledging the receipt of the certificate prior to the purchaser assuming possession of the premises and prior to the recording of the transfer of title.