Rodney L. Lynch appeals from a summary judgment granted to his employer, EG G Mound Applied Technologies, Inc. ("EG 
G"), on his complaint asserting various causes of action in connection with EG G's denial of his application to participate in the company's Voluntary Separation Payment Program ("VSPP"). For the reasons that follow, the judgment of the trial court will be affirmed.
EG G operated a facility in Miamisburg, Ohio pursuant to a contract with the Department of Energy (DOE). Rodney Lynch was initially employed by EG G in approximately 1989. At the time of his resignation from the company in 1996, Lynch worked as an industrial hygienist. In mid-1996, EG G was informed by the DOE that its funding for fiscal year 1997 would be reduced. As a result, EG G initiated an employment termination incentive program, the VSPP, as a means of reducing its number of employees. In brief summary, the VSPP provided that under certain circumstances, employees could receive cash payments and educational assistance funds in exchange for their voluntary separation from the company.
The VSPP was announced to EG G employees on July 15, 1996 via internal electronic mail. In addition, all employees, including Lynch, were provided with an information packet concerning the program entitled the "Official General Announcement Package." The first page of that packet stated,inter alia, "[w]here the terms of the 1996 Voluntary Separation Payment Program (VSPP) as described in this official package differ from those in any information you may receive in any format whatsoever, the Official General Announcement Package controls." Contained within that information packet was an interoffice correspondence from Earl Fray, the company's President and General Manager, to all eligible employees. That letter stated, inter alia:
 Management reserves the right to accept or deny any application for the VSPP. Management will review all applications on a case-by-case basis. The purpose of this review is to ensure the skills mix and people needed to continue the site mission are retained. The review will consider the applicant's current position in regard to fiscal year 1997 funding, mission and objectives; knowledge, skills and abilities; job performance and other factors. You are not eligible to participate in the VSPP if you are discharged for cause or otherwise terminate employment at Mound before September 30, 1996.
Following distribution of the announcement packet, various informational meetings were held throughout the company, including meetings of Lynch's department, industrial hygiene. At one of those meetings, the manager of the industrial hygiene department, Marvin Dale Miller, encouraged all of his employees, which included Lynch, to apply for the VSPP program. Miller told the members of the industrial hygiene staff that "I couldn't imagine anybody being denied" and that "I couldn't see how anybody would be denied based on how I saw the funding, skill mix, needs." Transcript of Deposition of Marvin Dale Miller, April 14, 1998, at pp. 47, 55.
On August 19, 1996, subsequent to the company informational meetings, all employees, including Lynch, were sent another electronic mail message concerning the VSPP. This message included a compilation of various questions and answers collected from the informational meetings. Included therein were the following questions and answers:
 12. If this is a "voluntary" plan, how can management deny an employee from participating?
 A. The Plan is "Voluntary" in that eligible employees are free to apply. Management reserves the right to accept or deny employee applications in order to maintain the skilled workforce necessary to complete the mission objectives and milestones.
* * *
 51. If 50 people apply and haven't met "numbers" can someone still be denied?
 A. Yes. The decision to approve or deny an application is based on the individual's knowledge, skills, and abilities as related to their department's particular mission, objectives, and milestones.
On August 21, 1996, Lynch completed an application form for the VSPP. Included in the application signed by Lynch was a statement that "I acknowledge: this application for participation does not guarantee that I will be approved for the VSPP." The application also included boxes to be checked by management indicating "APPROVED FOR VSPP" or "DENIED VSPP."
On September 9, 1996, Lynch was informed that his application for participation in the VSPP had been denied. Lynch testified that management explained to him the reason for the denial as follows:
 They said they needed to keep the industrial hygienists to support Mound's mission, and that if they let me go in their VSPP, they were not allowed to contract out or hire outside. They'd have to be replaced internally.
Transcript of Deposition of Rodney Lynch, December 17, 1997, at 61-62. Lynch was also subsequently provided with a copy of the "Selection Criteria" form used in reviewing Lynch's application for participation in the program. That document stated,inter alia, that Lynch's [p]osition is important to Mound mission and the most capable and diversified are needed. Need to keep all industrial hygienist." [Sic]. The document further stated that "[s]ection all ready loosing a I.H. to relocation out of state. Position is funded and cannot be backfilled internally from resource pool and existing plant workforce." [Sic]. Finally, Dale Miller, Lynch's manager, testified that he recommended that Lynch not be accepted into the program because:
 I had all the industrial hygienists funded or covered with the program commitments so my recommendation was that Mr. Lynch was needed. He had the skill mix in order to support the mission at Mound. He was an important and key person to the program.
Miller Deposition, supra, at 14.
After his application was rejected, Lynch requested and received a company review of that decision. On September 19, 1996, Lynch was informed by interoffice correspondence from the company president, Earl Fray, that the denial of his application had been affirmed. Fray's letter stated:
 The position of Industrial Hygienist II is an important task in the Industrial Safety and Hygiene Department. Rod, you are an experienced professional in the Industrial Safety and Hygiene Department and your position is important to ISH programs at Mound. Additionally this position is fully funded for FY 1997 and necessary in meeting the commitments we have made to DOE/MB. Dale Miller has reviewed the funded and unfunded persons you suggested and conclude that there is no one at present other than Deron Denton outside of the ISH organization with any qualifications to meet industrial hygiene responsibilities. Mr. Denton was selected to fill the place of Sandy Geibel, Industrial Hygienist I, who was approved as a VSPP applicant. It is important to understand that if the VSPP is granted without qualified replacements inside the company the Industrial Safety and Hygiene Department is prohibited from recruiting or contracting for your position.
 Our decision for denial based on our meeting is still the issue of scheduled commitments, qualifications, adequate time to train a replacement, and the sensitive nature of the work that could jeopardize worker safety. We feel the time to train your replacement would have an adverse effect on the schedule and require months rather than weeks to accomplish.
Lynch then appealed the company's denial of his application to the DOE. The DOE reviewed a number of denials and recommended that the company review and reconsider some of them, including Lynch's. On September 30, 1996, an interoffice correspondence was sent to Lynch from a company vice-president advising that Lynch's case had again been reviewed and that the denial of his application was felt to be appropriate. On that same date, Lynch submitted his resignation to the defendant. Five days earlier, on September 25, 1996, Lynch had accepted a position with another employer. Lynch Deposition,supra, at 72.
Lynch subsequently commenced the present action. In his complaint, Lynch asserted claims based on breach of an oral contract, negligent misrepresentation, promissory estoppel, and violation of public policy. EG G moved for summary judgment on all of Lynch's claims, essentially arguing that it had not guaranteed Lynch that his application to participate in the VSPP would be accepted.
The trial court granted EG G's motion for summary judgment. The court concluded that on the evidence presented, "no reasonable mind could conclude that that there was a meeting of the minds between the Plaintiff and Defendant sufficient to form a contract." Decision, Order and Entry Granting Defendant's Motion for Summary Judgment and Entering Judgment for Defendant, July 8, 1998, at 9. The court also concluded that the tort of negligent misrepresentation did not apply to an employer-employee relationship and that as a result, this aspect of Lynch's complaint failed to state a claim upon which relief could be granted. Concerning Lynch's promissory estoppel claim, the court concluded that no reasonable mind could find from the evidence presented that EG G made a clear and unambiguous promise to Lynch that he would be accepted into the VSPP program, or that EG G could have reasonably foreseen that Lynch would rely on the purported promise,
SUFFICIENT TO FORM A CONTRACT.
It is axiomatic that in order to prevail on a claim for a breach of contract, a party must demonstrate, inter alia, the existence of a binding contract or agreement. See, e.g.,Garofalo v. Chicago Title Ins. Co. (1995), 104 Ohio App.3d 95,108. "An enforceable contract may be created where there is an offer by one side, acceptance on the part of the other, and a meeting of the minds as to the essential terms of the agreement." McCarthy, Lebit, Crystal Haiman Co., L.P.A. v.First Union Mgt., Inc. (1993), 87 Ohio App.3d 613, 620. "An essential element needed to form a contract is that the parties must have a distinct and common intention which is communicated by each party to the other. * * * If the minds of the parties have not met, no contract is formed." Id. (Citations omitted). In other words, a party alleging a breach of contract must demonstrate that the parties agreed on the terms of the contract that allegedly has been breached.
Lynch contends that as a result of the comments made by his manager, Dale Miller, as set forth above, the defendant made a unilateral contract offer to the effect that if Lynch applied for the VSPP, he would be accepted. Lynch claims that when he submitted his application for participation in the program, a unilateral contract was created that was subsequently breached by EG G when it denied his application. Lynch contends that Miller's comments constituted a representation that no one in the industrial hygiene department would be denied participation in the program, contrary to the representation in the written materials indicating that the company reserved the right to decide on who would be permitted to participate in the program. As a result, Lynch argues that an ambiguity exists that can only be resolved by a trier of fact, not by way of summary judgment.
Even construed in Lynch's favor, Miller's comments do not rise to the level of any sort of unilateral contract offer to Lynch that his participation in the VSPP was guaranteed simply upon his submission of his application. Miller's comments did not provide an assurance, either directly or by inference, that Lynch would be accepted into the program regardless of the number of applicants, available funding, the company's needs, or the skill mix of the company's employees. They create no ambiguity with the written documentation that clearly and unequivocally stated that management reserved the right to determine who would be permitted to participate in the program. The very documentation that announced the program and that included a statement reserving management's rights in the selection process also indicated that the terms contained in that announcement package would control over any contrary information employees might receive. Further, in the very application that Lynch submitted, which he contends constituted his acceptance of the company's unilateral offer of assured participation in the program, Lynch acknowledged that "this application for participation does not guarantee that I will be approved for the VSPP."
Miller simply encouraged his employees to apply for the program and stated that he "couldn't imagine anybody being denied" and that he "couldn't see how anybody would be denied based on how I saw the funding, skill mix, needs." At most, these comments were nothing more than an expression of Miller's personal views or opinion concerning the likelihood of acceptance into the program based upon his perception of the company's needs. They are essentially his prediction concerning the unfolding of future events. As a matter of law, they did not convey a unilateral contract offer of guaranteed acceptance into the VSPP upon application.
In short, even when the evidence is construed in Lynch's favor, no genuine issue of material fact exists concerning whether a contract was formed between Lynch and EG G that assured Lynch's participation in the VSPP. Accordingly, Lynch's breach of contract claim necessarily fails and the trial court did not err in granting summary judgment to EG G on that claim.
The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN REFUSING TO RECOGNIZE THE CLAIM OF NEGLIGENT MISREPRESENTATION IN EMPLOYER-EMPLOYEE RELATIONSHIPS.
Ohio has recognized the tort of negligent misrepresentation.See Ed Schory Sons, Inc. V. Soc. Natl. Bank (1996), 75 Ohio St.3d 433,439-440. "The elements of negligent misrepresentation are as follows: 'One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.' " Delman v. ClevelandHeights (1989), 41 Ohio St.3d 1, 4, quoting 3 Restatement of the Law 2d, Torts (1965) 126-127, Section 552 (1) (emphasis supplied in Delman); see also Gutter v. Dow Jones, Inc. (1986),22 Ohio St.3d 286.
EG G argues that the tort of negligent misrepresentation does not apply in the context of an employer-employee relationship, a position adopted by the trial court. At least one Ohio court has concluded that the tort only applies to those who are in the business of supplying information and does not apply to the employer-employee relationship. See Nichols v.Ryder Truck Rental, Inc. (June 23, 1994), Cuyahoga App. No. 65376, unreported. Although Lynch cites no case in which the doctrine has been applied to the employment context, he urges its application here. However, it is not necessary for us to determine whether a claim of negligent misrepresentation can ever apply in the context of an employer-employee relationship. Even if it can, EG G was nevertheless entitled to summary judgment on Lynch's negligent misrepresentation claim for two reasons.
First, for the claim to lie, there must be evidence that the defendant supplied false information to the plaintiff. In support of his claim, Lynch again relies on the statements made by Miller. The record does not contain any evidence that the statements made by Miller were false. Contrary to Lynch's strained interpretation of Miller's comments, they did not constitute a representation that Lynch would be accepted into the program simply upon application, and thus, did not provide Lynch with a basis to pursue a claim of false representation upon the denial of his application.
Second, even if Miller's comments conveyed an alleged false representation, Lynch's reliance on them was not, as a matter of law, justified. As noted above, the initial program announcement made clear that no one was guaranteed acceptance into the program and further stated that the information contained in the announcement package would control over any contrary information that an employee might receive. Moreover, subsequent to Miller's comments, the company reaffirmed in an electronic mail message its right to accept or deny applications based on company needs. Finally, Lynch's application itself confirmed that acceptance into the program was not guaranteed.
In short, in the absence of evidence of a false representation and justifiable reliance on the alleged false representation, Lynch's negligent misrepresentation claim necessarily fails. Accordingly, an award of summary judgment to EG G on this claim was not error.
The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT WHERE THERE IS EVIDENCE OF RELIANCE BY PLAINTIFF UPON PROMISES MADE BY DEFENDANT.
In this assignment of error, Lynch contends that the trial court erred in granting summary judgment to EG G on his promissory estoppel claim. "The elements of promissory estoppel are (1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise." Weiper v. W.A. Hill Assoc. (1995), 104 Ohio App.3d 250,260.
In support of his promissory estoppel claim, Lynch again points to the comments of his manager, Dale Miller. For reasons similar to those discussed in our disposition of the previous two assignments of error, those comments do not support Lynch's promissory estoppel claim. Miller's comments did not convey a clear, unambiguous promise that Lynch would be accepted for participation in the VSPP simply upon his application to that program. Moreover, in view of the written documentation, including the application form itself, that clearly and unequivocally indicated that acceptance into the program was not guaranteed, Lynch's reliance on an alleged promise of acceptance to the program purportedly conveyed by Miller's comments was not reasonable as a matter of law. In the absence of evidence of a clear and unambiguous promise and reasonable reliance on such a promise, Lynch's promissory estoppel claim necessarily fails. Accordingly, the trial court did not err in granting summary judgment to EG G on Lynch's promissory estoppel claim.
The third assignment of error is overrule
FOURTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN SANCTIONING AS NON-ACTIONABLE THE CONDUCT OF DEFENDANT IN ARBITRARILY AND CAPRICIOUSLY IMPLEMENTING EMPLOYEE VOLUNTARY SEPARATION BENEFIT CRITERIA.
In this assignment of error, Lynch argues that in granting summary judgment to the defendant, the court effectively sanctioned EG G's arbitrary and capricious implementation of the VSPP. It is not altogether clear from Lynch's brief and reply brief whether this assignment of error relates to his public policy claim or his breach of contract claim. In either event, we find no error in the court's award of summary judgment.
In his complaint, Lynch asserted that EG G's conduct was "in clear violation of public policy and law." EG G moved for summary judgment on this claim, asserting, inter alia, that it failed to state a claim upon which relief could be granted. Lynch did not respond to this aspect of EG G's motion for summary judgment. Accordingly, we agree with the defendant that to the extent this argument is an attempt by Lynch to revive his public policy claim, it can not be raised for the first time on appeal. Moreover, Lynch has failed to articulate a clear public policy that applies to defendant's employment decisions and that has allegedly been violated here.
Lynch also appears to argue that this assignment of error is related to his breach of contract claim. As discussed above, Lynch has asserted that EG G entered into a unilateral contract with him whereby it promised to accept him into the VSPP simply upon his application to that program. To the extent that this assignment of error is an effort to argue that EG 
G breached that purported contract by "arbitrarily and capriciously" selecting those employees who would be permitted to participate in the program, it necessarily fails because as we have already determined, EG G did not enter into a contract promising acceptance into the program.
To a certain extent, it appears that the present argument is predicated on a different type of contract claim. The argument now appears to concede that Lynch's application for participation in the program was not guaranteed, but rather, was to be determined by the management of EG G on the basis of certain announced criteria. Lynch contends that in making those decisions, the defendant acted arbitrarily and capriciously, rather than fairly and consistently applying the stated criteria.
From the evidence outlined above, reasonable minds could only conclude that the defendant exercised its business judgment in deciding that Lynch was too valuable of an employee to permit his participation in the VSPP. Lynch's argument essentially asks us to second-guess the choices EG G made in the exercise of its business judgment. "As a general rule, the judiciary will not second guess business judgments by an employer making personnel decisions." Manofsky v. Goodyear Tire Rubber Co.
(1990), 69 Ohio App.3d 663, 669. Accordingly, the trial court did not err in failing to deny the defendant's motion for summary judgment on the basis now alleged by Lynch.
The fourth assignment of error is overruled.
 CONCLUSION