[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
This accelerated appeal comes to us from a summary judgment issued by the Lucas County Court of Common Pleas in a case involving claims against a bank for breach of contract and negligence in the breach of its duty of ordinary care, good faith, and fair dealing. Because we conclude that material issues of fact are in dispute, we reverse.
Phillip C. Frey was the president and principal owner of appellant, Toledo O.J., Inc., a franchised beverage store known for its "Orange Julius." Appellant's store was located at a mall in Toledo, Ohio. Frey lived in Montana but had established a company business account with appellee, Fifth Third Bank. Frey also owned two other Ohio Orange Julius stores located in other cities, each serviced by local banks.
In May 1995, Frey spoke with Greg Early, a loan officer at Fifth Third; Frey requested and received a Small Business Administration ("SBA") loan application. Frey needed a $35,000 loan to remodel the Toledo store location, pursuant to his lease agreement with the mall.
According to Frey, on September 18, 1995, he submitted the SBA application along with the required financial documents to Greg Early. Early had previously told him that because the loan was small (under $100,000), Frey could use a "low doc", SBA loan application which required less documentation and paperwork than regular SBA loans. Early told Frey the "turn-around" time for a "low doc" loan was about five days. Frey stated that he was unfamiliar with the "low-doc" application, having previously only utilized the longer SBA application methods.
Over the next three months, Frey called Early at various times to check on the status of the loan; Early was either not available or allegedly told Frey that there was no problem with the loan. On October 24, Frey met with Early to discuss documents which were needed, including, a current month profit and loss statement for Toledo O.J., two years tax returns for Frey's wife, Donna, and a copy of the mall lease.[1] Frey stated that Early had acted very confused and "drifted off" several times during the meeting. According to Frey, he provided all documents requested by Early; a copy of the mall lease was sent to Early which included the requirement that appellant remodel its store by June 1, 1996.
On December 14, 1995, (nearly three months after the application was submitted), Fifth Third sent Frey a loan commitment letter which included the following requirements: the loan was "conditioned upon approval of a 90% guarantee" by the SBA; the loans "shall be evidenced by certain loan documentation. The documents shall be in a form and substance that is acceptable to the Bank, its legal counsel and the Small Business Administration;" the loan "shall be guaranteed by Mr. Phil C. and Donna M. Frey;" and that a lien search was to be completed and evidence provided that insurance was obtained for the property with the bank named as "loss payee."
The commitment letter also noted that it needed to be signed and returned by December 31, 1995. On December 21, 1995, Frey accepted and returned the commitment letter, signing as president of Toledo O.J. and as guarantor. Donna Frey also signed as a guarantor.
Frey claims he called Early on January 5, 1996, to check the status of the loan. Early's secretary told him that Early was no longer employed at the bank, and appellant's entire loan file — including all paperwork — was missing. Per the secretary's request, Frey faxed a copy of the commitment letter to the bank. On January 8, 1995, Frey called the bank and talked to Todd Hoyt, who was handling all of Early's accounts. According to Frey, Hoyt, acting as if the loan was still proceeding, agreed to have the bank do a lien search and bill appellant for the cost.
On January 25, 1996, Frey again talked with Hoyt who told him that the bank had no paperwork for the loan or the SBA loan. Hoyt also told him that he had contacted SBA which said they had no record of any loan application being filed with them. When Frey asked Hoyt for an extension on the loan commitment, Hoyt allegedly told Frey he would not extend the commitment until Frey had sent him all the paperwork. Frey, who was then in Montana, found the paperwork which was in storage, made copies, and resubmitted the documents to Hoyt before the end of January. Frey stated that he never heard from the bank again.
In February 1996, Frey attempted to get an extension from the mall for the remodeling, but was refused. Frey then decided that it would be impossible to apply for a loan at another bank in time to finish remodeling the store by June 1, 1996. Frey arranged to sell all three of his Ohio Orange Julius franchises, stating that if he sold the Toledo business (which was the most profitable) it made no sense to keep the other two which were less profitable.
In January 1999, appellant sued appellee alleging damages for breach of contract and negligence claims. In deposition, Todd Hoyt acknowledged that Early had been discharged from employment at the bank and that Hoyt had taken over Early's files. Hoyt also admitted that Early's work evaluations showed that Early needed more efficiency and better handling of SBA loans. Hoyt said that he and others in the loan department were aware of odd behavior by Early, but attributed it to personal problems. Ultimately, Early was discharged in connection with embezzlement charges. Hoyt stated that although he had "never" refused to extend a loan commitment, he did not feel it necessary to give an extension in this case. Hoyt explained that he believed on January 25, 1996, appellant had enough time to resubmit all the documentation by January 31, 1996.
Appellant also offered, in deposition, an expert witness who opined that Early's actions fell below a reasonable standard of care for handling loan applications. While the expert acknowledged that it may have been "possible" and reasonable for appellant to try to obtain financing at another bank, it was also reasonable, under the time limits and circumstances of this case, for appellant, an out of state resident, not to pursue a loan with another local bank with which it had no relationship. The expert testified that, using the "annual owners cash flow" method of valuation, the value of the Toledo business was $85,987. She noted that appellant's sale of the business for $60,000 was below the fair market value, resulting in a loss of $25,987. Ultimately, the trial court granted summary judgment against appellant as to both the breach of contract and negligence claims.
Appellant now appeals, arguing that summary judgment was improper because material issues of fact remain in dispute and appellee was not entitled to judgment as a matter of law.
 I.
Appellant first argues that the trial court erred in granting summary judgment as to its breach of contract claims.
The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted if "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact" and, construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
To overcome summary judgment in favor of the defendant in an action for breach of contract, the plaintiff must present evidence as to the following elements: "(1) the terms of the contract, (2) the performance by the plaintiff of his obligations, (3) the breach by the defendant, (4) damages, and (5) consideration." American Sales, Inc. v. Boffo (1991),71 Ohio App.3d 168, 175.
In this case, appellee's employee made an offer to process a loan for appellant which Frey accepted by submitting an application in September 1995. The bank's employee had told appellant that it would take five days to process the loan.
In our view, when appellee received the last requested documentation in October, it had a duty to complete the process within or close to the five day time frame. Since appellee took more than one and a half months to issue a commitment letter, this establishes on its face that a breach of the initial loan processing agreement occurred in early November 1995.
In addition, the commitment letter constituted a second offer by the bank which was also accepted by appellant, establishing another contract. Appellee argues that the paperwork was "stale" and that appellant simply failed to provide all the documentation it needed in January 1996. The trial court agreed with appellee's argument. We note, however, that the trial court relied on an inaccurate date, May 15, 1995, as the date that the loan application was submitted in determining that appellant's documentation was "stale" by the time the letter of commitment was offered and accepted. A careful review of the record reveals that the loan application was submitted on September 18, 1995.[2]
By October 1995, appellee complied with all requests for documents made by Greg Early, the bank's employee. At that point, the paperwork was not stale.
Moreover, Frey had no reason to believe he needed to submit additional paperwork, since he had allegedly already submitted what was requested for the "low-doc" loan. Nothing in the record indicates that appellee asked specifically for additional documents and that appellant failed to submit them. It was not until mid-January 1996 that Frey discovered that the bank had lost the entire file and Early had failed to file the SBA loan application. He was then required to re-submit documentation which he again says he did. Therefore, the issue is not whether the paperwork was stale, but whether or not appellant had complied with all previous requests and whether appellee's delays or inaction caused the need for the resubmission of documentation. Furthermore, even if appellant failed to submit the required paperwork in January, a question of fact exists as to whether or not the bank's actions made it impossible for him to comply and whether the refusal to extend the loan commitment was reasonable.
Finally, appellant provided sufficient evidence of its damages suffered in the alleged forced sale through the testimony of its expert. Whether or not the sale was in fact appellant's only alternative or whether he could have gotten financing elsewhere and completed the remodeling in time is an issue which goes to mitigation of damages. Generally, the failure to mitigate damages is an affirmative defense and is an issue for the trier of fact. Smith v. Minnus (July 31, 1985), Butler App. No. CA84-07-080, unreported.
Appellee presents insufficient evidence to support its argument that appellant could have obtained another loan and completed the remodeling within the four month time frame. While appellant's expert acknowledged that it may have been possible for appellant to get another loan, it was, according to the expert, reasonable for him not to pursue that alternative. This falls far short of what is needed for summary judgment. The mitigation of damages issue, therefore, remains for determination by the trier of fact. Therefore, since material issues of fact remain in dispute as to each of the elements of the breach of contract claim, summary judgment is improper.
 II.
Appellant also contends that summary judgment was improper as to its negligence claims. Appellee is essentially arguing that appellee breached its duty of ordinary care, good faith, and fair dealing by negligently retaining an employee who was incompetent and who made certain misrepresentations upon which appellant relied to his detriment.
Appellant's negligence claims arise from the actions taken by Early prior to the contract, i.e., the loan commitment letter, as well as the actions by Hoyt after the discovery of the missing file. Appellant's claims involving Early encompass claims for negligent retention of an employee,[3] as well as misrepresentation.[4] The broader claim for the bank's breach of its duty of good faith and fair dealing may also apply to both
Early and Hoyt. While certain facts may be relevant to both causes of action, in our view, appellant has established, for summary judgment purposes, negligence claims which are separate from the breach of contract claims. Since these claims involve material facts which are in dispute, summary judgment as to the negligence claims is also improper.
Accordingly, appellant's sole assignment of error is well-taken.
The judgment of the Lucas County Court of Common Pleas is reversed and remanded for proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.
JUDGMENT REVERSED.
Peter M. Handwork, J., Melvin L. Resnick, J., James R. Sherck, J., CONCUR.
[1] Frey testified in deposition that his notes from the meeting included a listing of these items with check marks next to them, indicating that they had been sent to Early.
[2] Frey stated that he asked for the loan application on May 18, 1995 and received it at the end of May. We were unable to find in the record any reference to May 15, 1995.
[3] An action for negligent hiring or retention of an employee requires the following elements:"(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." Walters v. Hawken School (Jan. 28, 1999), Cuyahoga App. No. 75274, unreported, citing Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 69.
[4] In Delman v. Cleveland Heights (1989), 41 Ohio St.3d 1, 9, the Supreme Court of Ohio designated the elements of negligent misrepresentation as follows:
 "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."