**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0659n.06

No. 08-3815

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Sep 24, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| DAVID A. FLYNN, INC., et al., | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| GENERAL MOTORS ACCEPTANCE | ) | |
| CORPORATION, | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellee.** | ) | |
| _____ | ) | |

**Before: MOORE, GIBBONS, and FRIEDMAN,**[*] **Circuit Judges.**

**FRIEDMAN, Circuit Judge**. The appellant David A. Flynn, who recently had purchased

a General Motors truck dealership, filed suit in the district court against General Motors Acceptance

Corporation ("GMAC"), General Motors' financial arm and a secured creditor of the dealership. It

sought damages for GMAC's alleged failure to disclose to him all the facts it knew about odometer

tampering on used trucks the dealership had sold. The district court granted summary judgment for

GMAC and dismissed Flynn's suit, holding that the undisputed facts before it showed that GMAC

disclosed to Flynn what it was aware of about odometer tampering. We **AFFIRM**.

I

_____

[*] Daniel M. Friedman, United States Circuit Judge for the United States Court of Appeals
for the Federal Circuit, sitting by designation.

A. In the fall of 2003 Flynn, an experienced businessman who had previously been involved in automotive dealerships, began considering the purchase of Midway Motors Sales ("Midway"), a General Motors truck dealership owned by the Mercure brothers. In April 2004, he executed an agreement with the brothers to purchase Midway.

Before closing on the transaction, Flynn heard rumors from several sources of odometer tampering at Midway. On May 26, 2004, Flynn told Midway's service manager that he was "'concerned about rumors flying around that Mercure is going to get indicted for odometer fraud state and federally.'" The service manager told him that "'It's true,'" and that Mercure had actually rolled back the odometers. When Flynn later asked one of the brothers about the matter, the latter denied any odometer tampering.

On the same day Flynn spoke with the Midway service manager, he also spoke to four GMAC employees by telephone. He surreptitiously recorded those conversations.

The first employee he called, Robert Fabian, told him that he, too, had heard the same rumors of odometer tampering at Midway, but that he did not have direct personal knowledge whether it had occurred. Fabian referred Flynn to Steve Hidell, who told Flynn that he was aware of the rumors, and that GMAC had begun an investigation of the matter. Apart from his reference to the rumors and GMAC's ongoing investigation, Hidell stated that he was otherwise "out of the loop" and had no further factual information.

Hidell referred Flynn to his boss, Chapman, who also said that he had heard rumors about odometer tampering at Midway. Chapman also told him that a lawsuit had been filed in Michigan against Midway and GMAC in connection with an alleged odometer rollback, and suggested that he look into it.

Later that day Anita Bhama, an attorney at GMAC, called Flynn. She confirmed that the aforementioned lawsuit had been filed. She told him that GMAC had concerns about odometer rollbacks at Midway, that GMAC had reported the matter to law enforcement authorities and that the company was cooperating in that investigation.

Flynn closed on the acquisition on May 28, 2004. Before doing so, he did not discuss the proposed acquisition with his controller because he knew that, in light of the rumored odometer tampering, "'he'd [the controller] say don't do the deal.'"

B. Flynn filed the present diversity suit against GMAC in the United States District Court for the Northern District of Ohio. Flynn's amended complaint contained five claims: for negligence, fraud, negligent misrepresentation, intentional misrepresentation, and breach of fiduciary duty.

The district court granted summary judgment for GMAC and dismissed the complaint. It held that Flynn had produced no evidence that GMAC made false statements or misrepresentations, and that GMAC was under no duty to disclose additional information. In its order denying reconsideration, the court stated that the depositions of the four GMAC employees Flynn had spoken to on May 26, 2004 "revealed that GMAC did not have definitive evidence of odometer tampering and that its employees had provided accurate information to Flynn."

II

The record fully supports the district court's factual determination that GMAC did not make any false or misleading statements and that it did not breach a "duty to refrain from making false or misleading statements when inquiry was made by Flynn." (Memorandum of Opinion, RE #23, p. 5). At most, the evidence showed that GMAC had a "suspicion" or had heard rumors, but not that it had definitive knowledge that there had been odometer tampering at Midway. Because of a lack of

evidence that the four GMAC employees that Flynn spoke with on May 26, 2004 had actual knowledge that Midway had tampered with odometers, all of Flynn's causes of action, which depended on such knowledge by GMAC, fail.

Flynn contends that Bhama's deposition testimony that GMAC had "documentary evidence" of rollbacks shows that she had more than "mere suspicion" when she spoke to Flynn. He relies on the following exchange during her deposition:

> Q. On the date you spoke with Mr. Flynn, did you have actual knowledge there had been odometer tampering by Midway Motors with respect to the Modern Builder Supply [a Midway customer] vehicle?
>
> A. We had suspicions of it…. In the few months preceding that conversation, GMAC had discussed with Midway and Modern Builder Supply concerns about odometer tampering, based on documentary evidence that suggested that odometer tampering had occurred. Do I have actual knowledge personally? No.

The "documentary evidence" to which she referred related to GMAC's "suspicion" of "odometer tampering" and did not constitute "documentary evidence" of rollbacks, as Flynn contends. She stated unequivocally "No" to the question whether she had "actual knowledge personally" of tampering.

In his brief Flynn relies on and quotes from a deposition given by another GMAC employee, Jerry Galvin, in a different case, Midway's subsequent bankruptcy proceeding. That document is not part of record in this case and we therefore do not consider it. We decide appeals on the basis of the record in the case before us, not on the basis of the record in some other case. It was most inappropriate for Flynn and his counsel to rely on the Galvin deposition.

Flynn asserts a claim for negligent misrepresentation, which he alleges GMAC committed when, in the language of the district court denying that claim, it failed "to disclose the full breadth of its investigation of the odometer fraud." Under Ohio law defining that claim,

> [o]ne who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions . . . is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Anderson's, Inc. v. Consol, Inc.*, 348 F.3d 496, 505-06 (6th Cir. 2003) (quoting *Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 534 N.E.2d 835, 838 (Ohio 1989)).

Thus, an essential element of this tort under Ohio law is that the defendant "supplies false information for the guidance of others in their business transactions." As we have shown, the record supports the district court's determination that the information GMAC supplied to Flynn was truthful, not false.

## III

Flynn contends that the district court abused its discretion by not permitting additional discovery, arguing that "[f]rom the limited discovery that was permitted, it became clear that Gerald Galvin was the GMAC employee that investigated and discovered the odometer rollbacks at Midway, and shared that information with Anita Bhama, among others." The facts relating to this argument are as follows:

In a December 2007 case management conference, the district court told Flynn that his initial complaint was inadequate, but that he could amend it and also take the depositions of the four GMAC employees whom he spoke to in 2004. The court made the latter ruling after Flynn's lawyer

had answered "Yes" to the court's question: "[s]o those are the four individuals you would allege have either made false or misleading statements with regard to the odometer disclosures, odometer rollbacks?" The district court set strict time deadlines. Flynn had fourteen days to file an amended complaint, and all discovery was to be concluded within sixty days.

Although Flynn met those deadlines, neither at the conference nor thereafter did he move for additional discovery or to depose Galvin. The district court cannot be faulted for failure to grant a request that was not made to it. Indeed, the case management plan recognized that other depositions might be sought, since after listing the six individuals whose depositions the parties could take, it stated: "The parties shall not notice other depositions without obtaining leave of court."

IV

Flynn also contends that there were disputed factual issues that precluded the grant of summary judgment. The record does not support this contention.

In response to GMAC's motion for summary judgment, Rule 56(e) of the Rules of Civil Procedure permitted Flynn to offer affidavits of those with "personal knowledge" that "set out facts that would be admissible in evidence" and demonstrate that the affiant could testify. Fed. R. Civ. P. 56(e)(1). A party, however, "may not rely merely on allegations or denials in its own pleading" but must supply the affidavits described in Rule 56(e)(1), *See* Fed. R. Civ. P. 56(e)(2). If a party cannot produce an affidavit from a person whose testimony could later be introduced, then he must show by his own "affidavit that for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f).

The only affidavit Flynn submitted to the district court in opposition to summary judgment was his own. It stated only that (1) Flynn had two conversations with Bhama on May 26, 2004; (2)

Bhama did not advise him that GMAC had documentary evidence of odometer tampering; and (3) Bhama did not tell him that she had a meeting with Midway and Modern Builders Supply to determine how Midway, Modern, and GMAC would deal "with the problems resulting from Midway odometer tampering." Because Flynn's affidavit did not establish that Flynn's testimony would provide facts not already in the record, it failed to create any disputed issue of material fact that would preclude summary judgment.

Rule 56(f) also authorizes a district court, in response to a party's affidavits showing that, for the reasons there stated, the party cannot present by affidavit "facts essential to justify its opposition" to the motion, to order a continuance "to enable affidavits to be obtained, depositions to be taken . . . [or] issue any other just order." In response to GMAC's motion for summary judgment, Flynn neither filed such affidavits nor moved to take Galvin's deposition to aid him in opposing the motion. As this court has stated: "The importance of complying with Rule 56(f) cannot be overemphasized." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (2000).

Flynn seeks to cure these lacuna in the record by citing unauthenticated notes that he filed with his opposition to summary judgment and which he contends the district court improperly refused to admit. The notes allegedly were made by a lawyer named Garea, who represented Midway and its owners, and related to a meeting among Garea, Bahma, Galvin, and another person. There was no affidavit by Garea identifying or authenticating the notes. Flynn contends, however, that the memorandum he submitted through counsel in opposing summary judgment, which stated that the notes were Garea's, should be treated as an affidavit for Rule 56 purposes.

The district court correctly refused to do so. This court has repeatedly emphasized that unauthenticated documents do not meet the requirements of Rule 56(e). *Michigan Paytel Joint*

*Venture v. City of Detroit*, 287 F.3d 527, 532 n. 5 (6th Cir. 2002); *see also Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) ("This court has ruled that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded.") Whatever requirements Federal Rule of Civil Procedure 11 (on which Flynn relies) imposes on attorneys as certifying the correctness of statements made in judicial pleadings and documents, the rule does not convert Flynn's memorandum that his lawyer filed into an affidavit under Rule 56(e).

Finally, although the district court refused to admit the notes and did not discuss them in its order granting summary judgment, in its order denying rehearing it stated that "contrary to Flynn's assertions, this Court did consider the notes proffered by Flynn, despite their evidentiary inadequacies, and found that they did not create an issue of fact." (Order Denying Reconsideration, 3).

Flynn's other arguments, which we have considered but deem unpersuasive, do not warrant separate discussion.

## CONCLUSION

The order of the district court granting summary judgment for GMAC and dismissing Flynn's complaint is affirmed.