[Cite as *Clendenin v. Ochmanek*, 2016-Ohio-737.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Kristi Clendenin, et al.

Appellants

v.

Brandon Ochmanek, et al.

Appellees

Court of Appeals Nos. L-15-1180
L-15-1228

Trial Court No. CI0201401819

**DECISION AND JUDGMENT**

Decided: February 26, 2016

* * * * *

Howard B. Hershman and Jeffrey C. Zilba, for appellants.

Justin D. Harris, for appellees Brandon Ochmanek and Compass
Insurance Services, LLC.

Joshua R. Bills, for appellee MutualAid eXchange.

* * * * *

**SINGER, J.**

{¶ 1} Appellants, Kristi and Richard Clendenin, filed this accelerated appeal from

decisions of the Lucas County Court of Common Pleas granting summary judgment to

appellees, MutualAid eXchange ("MAX"), Brandon Ochmanek, and Compass Insurance Services, LLC ("Ochmanek"). The trial court issued two separate decisions. For the reasons that follow, we affirm the decision granting summary judgment to MAX, but reverse the decision granting summary judgment to Ochmanek.

{¶ 2} Appellee Ochmanek is a licensed Ohio insurance agent with Compass Insurance Services. His company represents multiple insurance carriers. In 2013, appellants purchased homeowner's insurance from Ochmanek. The insurance carrier was appellee MAX. On November 4, 2013, MAX cancelled the policy citing the condition of the property. Appellants received written notice of the cancellation from MAX. Appellants remedied the conditions they believed resulted in the cancellation of the policy and they assumed they remained insured. On January 7, 2014, appellants' home was destroyed by fire. When they attempted to make a claim on their MAX policy, they were denied because the policy had remained cancelled since November 4, 2013.

{¶ 3} Appellants filed a declaratory judgment action against appellees. The trial court granted summary judgment to appellees. Appellants now appeal setting forth the following assignment of error:

> I. The trial court erred in granting summary judgment to appellees as genuine issues of material fact remain to be decided and appellees were not entitled to judgment as a matter of law.

{¶ 4} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same

2.

standard as trial courts.  *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989).  The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.  *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 5} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).  When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact.  Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984).  A "material" fact is one which would affect the outcome of the suit under the applicable substantive law.  *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826,

3.

675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

## Ochmanek's Version of Events

{¶ 6} The following is a summary of Ochmanek's deposition. On September 9, 2013, Ochmanek issued appellants an insurance binder for their property. Following an underwriting inspection by MAX, appellants received a letter from MAX, dated October 2, 2013, notifying them that as of November 4, 2013, their policy will be cancelled due to the condition of the property. MAX also issued them a refund check for their premium. The notice specifically advised appellants to contact Ochmanek with regard to any questions they might have about the cancellation.

{¶ 7} Appellant Richard Clendenin contacted Ochmanek after receiving the notice. Ochmanek advised them to take care of the property concerns which resulted in the cancellation notice and he told him he would attempt to reinstate the policy. Ochmanek testified in his deposition that he made it clear to Clendenin that he would "attempt" to get the policy reinstated, but that only MAX had the authority to reinstate the policy. Ochmanek testified he did not advise Clendenin to look elsewhere for insurance. Ochmanek acknowledged that it was reasonable for Clendenin to assume Ochmanek was attempting to get the policy reinstated.

{¶ 8} On November 3, a Sunday, Clendenin called Ochmanek to tell him he had remedied the property concerns. On Monday, November 4, Clendenin went to Ochmanek's office and gave him the endorsed refund check.

4.

**{¶ 9}** On November 5, Ochmanek sent MAX an electronic message telling them that Clendenin had repaired his property. He asked "[C]an we get this policy back in force?" A MAX representative responded, on November 5: "[t]he policy was cancelled because the overall condition and maintenance of the home and property were not favorable, not just the yard. We will not be offering any reinstatement on the property." The record shows that Ochmanek sent another message, also on November 5, asking MAX to reconsider their decision. The MAX representative responded, on November 5 stating: "[I] have discussed this with my supervisor and we are not willing to offer a reinstatement on this risk." Ochmanek testified he did not personally relay this message to Clendenin. Instead, on November 5, he sent appellants a letter informing them that MAX had declined to reinstate the policy. The letter advised appellants to seek coverage elsewhere or through the Ohio Fair Plan, a program that provides insurance for property unable to obtain insurance through the voluntary market. Ochmanek enclosed appellants' refund check from MAX. Ochmanek testified that appellants did not contact him regarding the letter.

**{¶ 10}** Ochmanek testified that on or about January 8, 2014, Clendenin came to his office to file an insurance claim because of the house fire. Ochmanek testified that he told Clendenin that "[t]he claim would be filed and someone would be in contact with him from MAX." Ochmanek testified that he knew at the time that Clendenin had no coverage. He testified that he lied because he was the only one in the office and

5.

Clendenin's demeanor caused him to have safety concerns, specifically, Clendenin's aggressive stance and position.

**Richard Clendenin's Version of Events**

{¶ 11} In his deposition, Clendenin testified that he contacted Ochmanek within a week of receiving the cancellation notice. He asked Ochmanek why the policy was being cancelled and he was told it was because specific repairs were needed, a trampoline removed and debris cleared from the yard. The following week, Clendenin testified that he called Ochmanek to tell him the repairs were completed. He did not speak to Ochmanek. Not hearing back from him, Clendenin again called Ochmanek in the middle of October to tell him about the repairs. According to Clendenin, Ochmanek told him "[w]e were fine, what we repaired was good." Clendenin testified that Ochmanek never told him that MAX had to approve the repairs first. He testified: "[I] specifically asked him, will my insurance be cancelled, he told me, no, I would still be insured, this isn't the first time he's done this, he's done it in the past."

{¶ 12} The next time Clendenin had contact with Ochmanek was after appellants received a refund check from MAX. The check was dated October 31, 2013. Clendenin called Ochmanek to ask him why they had received the check. Ochmanek told him "* * * it must have crossed in the mail." He then told Clendenin to bring him a check in the same amount. Clendenin asked if he could mail the check to Ochmanek and Ochmanek agreed. Clendenin testified that he called Ochmanek around November 8,

6.

2013, to make sure he received the check. Ochmanek acknowledged receiving the check. Clendenin further testified:

> I said, so are we still covered? He said, yes. I said, well, by the insurance letter, this letter it says that we're cancelled. That's when he told me, trust me, I've been doing this long enough, I know what I am talking about. I said, Okay.

Clendenin testified that was the last time he talked to Ochmanek before the fire. On the day of the fire, he called Ochmanek and left him a message telling him of the fire. Ochmanek called him back the next day and told him he would contact MAX, get him a check, find somewhere for appellants to live and start the claim process. Clendenin testified that Ochmanek told him to give him until the end of the day to work everything out. When Clendenin could not reach Ochmanek at the end of the day, he went to the Compass office the next morning, January 9, 2014. Ochmanek told him he put in a claim and that it usually takes 24 hours. Ochmanek told him to check back in a couple hours. When Clendenin again could not reach Ochmanek, he called MAX to check on his claim. A MAX representative then informed him no claim could be filed because appellants were not insured with MAX.

{¶ 13} Clendenin then went to Ochmanek's office. Clendenin testified that Ochmanek handed him the letter informing appellants that MAX had declined to reinstate the policy and advising them to seek insurance elsewhere. Ochmanek also handed Clendenin the refund check from MAX.

7.

## MAX Decision

{¶ 14} The record in this case supports the trial court's decision that MAX timely notified appellants that their policy had been cancelled and there is no evidence that anyone from MAX led appellants to believe otherwise. Accordingly, appellants' assignment of error as it pertains to the MAX decision is found not well-taken.

## Ochmanek Decision

{¶ 15} In their initial complaint, appellants alleged Ochmanek was negligent. Specifically, they alleged that Ochmanek owed them a duty of good faith and reasonable diligence in the acquisition of homeowner's insurance. They alleged that Ochmanek negligently represented that their policy would be reinstated and that their coverage would remain in effect without interruption. They alleged that Ochmanek committed fraud when he knowingly assured them they had homeowner's insurance when he knew that to be false.

{¶ 16} Negligent misrepresentation provides recovery where: 1) a party who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, provides false information; 2) for the guidance of another party in its business transaction; 3) causing the other party to suffer pecuniary loss; 4) as a result of justifiable reliance on the information; 5) if the one providing the information failed to exercise reasonable care or competence in obtaining and communicating the information. *Delman v. City of Cleveland Hts.*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989).

8.

**{¶ 17}** In view of the differing accounts regarding Ochmanek's representation of the status of appellants' homeowner's policy, before their loss and after, we conclude that there is a question of material fact as to whether Ochmanek negligently misrepresented the fact that they were insured. Accordingly, appellants' assignment of error as it pertains to the Ochmanek decision is found well-taken.

**{¶ 18}** On consideration whereof, the judgments of the Lucas County Court of Common Pleas are affirmed in part and reversed in part. This matter is remanded to said court for further proceedings in conformity with this decision. Court costs of the appeal are assessed against appellee Ochmanek pursuant to App.R. 24.

Judgments affirmed in part
and reversed in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.           _____

                                                                     JUDGE

Arlene Singer, J.                

                                                                       _____

Thomas J. Osowik, J.              JUDGE
CONCUR.

                                                                        _____

                                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.