DICKERSON INTERNATIONALE, INC. et al., Appellants,

v.

KLOCKNER et al., Appellees.

[Cite as *Dickerson Internationale, Inc. v. Klockner* (2000), 139 Ohio App.3d 371.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 99–CA–39.

Decided Oct. 13, 2000.

372

*Stanley L. Trissell, Jr.,* for appellants.

*Robert M. Harrelson,* for appellees.

---

FAIN, Judge.

Plaintiffs-appellants J.W. Dickerson and Dickerson Internationale, Inc. appeal from a judgment rendered against them on their claims for fraud, negligent misrepresentation, and breach of warranty against defendants-appellees Richard W. Klockner and Klockner & Associates, arising from civil engineering and surveying services Klockner performed for Dickerson with respect to Dickerson's development of a residential subdivision known as Pleasant View Estates. Dickerson argues that the trial court erred by finding that none of his land lies within the one-hundred-year flood plain, and by ruling against him on the claims set forth above.

We conclude that the trial court did not err by ruling against Dickerson's negligent misrepresentation claim because Dickerson failed to present expert testimony concerning the tests and investigations that Klockner should have performed to determine the true location of the flood plain. We further conclude that the trial court did not err in rejecting Dickerson's breach of warranty claim, since the complaint and evidence adduced at trial showed that Dickerson's claim sounded in tort, not contract. We also conclude that the trial court did not err in rejecting Dickerson's fraud claim, since there was sufficient evidence presented to permit the trial court to conclude that any alleged misrepresentation that Klockner may have made to Dickerson about the number of lots that would require flood insurance was merely the result of negligence, and was not made with knowledge of its falsity or with reckless disregard whether it was true or false. Accordingly, the judgment of the trial court is affirmed.

I

Dickerson is the owner of a thirty-one-acre tract of land located within the city of Troy. Peter's Creek runs along the northern boundary of Dickerson's property. In the early 1970s, the city dredged and cleaned the creek and built a levee along its banks to prevent flooding.

In 1982, the Federal Emergency Management Agency ("FEMA") issued a preliminary Flood Insurance Rate Map for Troy. This preliminary map classified all of Dickerson's lower land, except for the western one-fourth, as being within "Flood Zone A," meaning that the property would be subject to flooding in a one-hundred-year storm, which would require any buildings constructed on it to be covered by flood insurance. Troy's Service Director, Arthur Haddad, challenged the 1982 preliminary map. As a result, FEMA issued a revised final draft of the Flood Insurance Rate Map, removing all of Dickerson's property from the Flood Zone A classification, except for a portion represented by a "bubble" on the map, which was contiguous to Peter's Creek on the northern boundary of the property.

In 1992, Dickerson began developing the property as a residential neighborhood, known as the Pleasant View Estates Subdivision. Dickerson hired Klockner, a licensed civil engineer and registered surveyor, to perform services for him with respect to the development. In early 1992 or late 1993, Dickerson asked Klockner how many lots in his proposed development would require flood insurance. According to Dickerson and his wife Glenna, Klockner told them that only "two or three" or "three or four" of the lots would require flood insurance. According to Klockner, however, he told Dickerson, "I don't know. I would guess five or more" lots would require flood insurance.

Also in 1992, government officials from Miami County and the city of Troy asked Dickerson to provide them with an easement allowing them to run a sewer line through his property in order to permit the county and city to provide sewer service to other properties to the south of his. Over the next several years, Dickerson negotiated the terms of the sewer easement with county and city officials, and with Uma Parekh, who owned property to the south of Dickerson's land, and who desired the sewer easement in order to develop her property. In December 1995, Dickerson and Parekh entered into an agreement whereby Dickerson granted Parekh an easement to run a sewer line through his property, and Parekh, in exchange, agreed to pay for the entire cost of the sewer line, which would also benefit Dickerson's development. Klockner, who was performing engineering services for Parekh's development at the same time he was performing similar services for Dickerson's development, established the location of the sewer line on Dickerson's property.

In the fall of 1996, after Dickerson's development of the residential neighborhood had begun, the Flood Administrator for Troy, Frank Davis, determined that approximately thirteen of Dickerson's lots would require flood insurance. Dickerson and Klockner filed a Letter of Map Revision ("LOMR") with FEMA, seeking a determination that because of the levee that was constructed in the 1970s, the "bubble" on Dickerson's property would not be inundated by a one-

hundred-year flood. In January 1998, FEMA sent Dickerson a letter denying his LOMR on the grounds that the levee constructed along Peters Creek in the 1970s did not meet the requirements of Section 65.10, Title 44, C.F.R., insofar as it did not have the necessary three feet of freeboard. Additionally, the letter from FEMA noted that *all* of Dickerson's property *may* be inundated by a one-hundred-year flood from Swailes Creek, located to the south of Dickerson's property.

In November 1997, Dickerson and his company, Dickerson Internationale, Inc., filed a complaint against Klockner and his company, Klockner & Associates, alleging that Klockner (1) had conspired with others, including Parekh, to defraud him into granting the sewer easement; (2) had been professionally negligent in the performance of his duties; (3) had negligently misrepresented the number of lots that would require flood insurance by failing to make adequate tests or investigations with respect to the true location of the one-hundred-year flood plain; and (4) had "breached his warranty" that Dickerson's land would be fit for residential development. Klockner filed a counterclaim alleging Dickerson owed him payment for services rendered.

A twelve-day bench trial was held on the matter in July and August 1999. At the close of Dickerson's case-in-chief, the trial court dismissed Dickerson's fraud claim. Following the conclusion of the trial, the trial court entered judgment on September 30, 1999, finding against Dickerson with respect to his remaining claims. Initially, the trial court concluded that none of the existing lots on the Dickerson property was within Flood Zone A, notwithstanding FEMA's claims to the contrary. The trial court rejected Dickerson's professional negligence claim because, among other things, Dickerson failed to present expert testimony to establish the standard of care owed by civil engineers. The trial court rejected Dickerson's negligent misrepresentation claim essentially on the same grounds. The trial court rejected Dickerson's breach of warranty claim on the ground that the "complaint and evidence produced at trial sounded in tort, not in contract." The trial court incorporated its July 23 entry, rejecting Dickerson's fraud claim on the basis that Klockner did not conceal a fact or make a false representation to Dickerson with the intent of misleading him to rely on it. The trial court also ruled that Klockner's counterclaim seeking payment was "unripe," since under the terms of their arrangement, Dickerson was not obligated to pay Klockner until each lot was sold.

Dickerson and Dickerson Internationale, Inc. appeal from the trial court's September 30 judgment entry.

## II

Dickerson's second and third assignments of error state as follows:

"The trial court erred by finding that plaintiffs/appellants failed to prove negligent misrepresentation by a preponderance of the evidence.

"The trial court erred by failing to award damages to plaintiff/appellant on the claim of negligent misrepresentation."

Dickerson argues that the trial court erred by rejecting his negligent misrepresentation claim on the basis that Dickerson failed to present any expert testimony regarding what tests or investigations a reasonably prudent civil engineer and land surveyor in Klockner's position would have performed in order to determine the "true location" of the one-hundred-year flood plain. Dickerson contends that Klockner should simply have superimposed a copy of Dickerson's plat, drawn to scale, over a copy of FEMA's flood map; if Klockner had done so, Dickerson asserts, he would have discovered that fourteen lots were in Flood Zone A, not three or four, or even "five or more," as he had represented. Dickerson asserts that this failure could be understood by a lay person without the aid of expert testimony regarding the proper standard of care. We find Dickerson's argument unpersuasive.

■ The elements of negligent misrepresentation are as follows:

■ "One who, in the course of his business, profession or employment * * * supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 4 [534 N.E.2d 835, 837–838], quoting 3 Restatement of the Law 2d, Torts (1965) 126–127, Section 552(1)." (Emphasis *sic.*)

■ The determination whether a supplier of information has used reasonable care or competence in obtaining the information provided is dependent upon the circumstances and will vary according to many factors. *Id.* at 130, Comment *e.* "When the information concerns a fact not known to the recipient, he is entitled to expect that the supplier will exercise that care and competence in its ascertainment which the supplier's business or profession requires and which, therefore, the supplier professes to have by engaging in it." *Id.* Proof of the standard of care and competence that a business or profession requires must necessarily be provided through expert testimony unless the lack of skill or care is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it. See *Wells v. Miami Valley Hosp.* (1993), 90 Ohio App.3d 840, 849, 631 N.E.2d 642, 647–648, citing *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 130–132, 75 O.O.2d 184, 186–187, 346 N.E.2d 673, 676–678.

The gist of Dickerson's cause of action for negligent misrepresentation is found in paragraph 30 of his complaint, which states:

"Defendant Richard W. Klockner negligently failed to make adequate tests or investigations with respect to the true location of the 100–year flood plain within the Property and as a direct and proximate cause of the negligent misrepresentations of Defendant Richard W. Klockner, nearly all of the lots in Pleasant View Estates lie within the 100–year Flood Plain and are not fit for their intended use."

Paragraph 30, when read in context with the remainder of the complaint, essentially alleges that if Klockner had performed adequate tests or investigations with respect to the actual or "true" location of the one-hundred-year flood plain, he would have discovered that "nearly all" of the seventy-six lots in the subdivision, *i.e.*, sixty-two of the seventy-six lots, were within the one-hundred-year flood plain, and not just three lots, as allegedly represented by Klockner. Dickerson alleges elsewhere in his complaint that he would not have continued with the development if he had known the true facts regarding the flood plain.

Thus, the essence of Dickerson's complaint is *not*, as he now claims, that fourteen of his seventy-six lots are located on the one-hundred-year flood plain as shown on FEMA's map, and Klockner should not, therefore, have told him either that two or three lots, or three or four, or five or more, depending on which version of Klockner's statement is accepted, were within the flood plain. To the contrary, the essence of Dickerson's complaint is that, notwithstanding FEMA's inaccurate map, sixty-two of his lots are located within the one-hundred-year flood plain, which would arguably make misleading any of the different versions of Klockner's statement.

In rejecting Dickerson's negligent misrepresentation claim, the trial court stated:

"Although the Court has concluded none of the property is within a one-hundred-year flood plain, absent such a conclusion the Court would need to be apprised of the tests or investigations that a prudent engineer should employ under the same or similar circumstances, in which the Defendant was deficient. No such evidence was available and the Court concludes the Plaintiffs have not established by a preponderance of the evidence the fourth cause of action."

Dickerson argues that Klockner needed only to superimpose a plat of his property over the FEMA flood map to determine the number of lots that would have required flood insurance and that no expert testimony was needed to explain Klockner's lack of reasonable care in failing to do so. However, superimposing a plat of Dickerson's property over the FEMA map would have revealed only that the bubble, which contained fourteen of Dickerson's seventy-six lots, were in

Flood Zone A. In order to learn that "nearly all" of the lots in the subdivision, or sixty-two out of the seventy-six total lots, were in the one-hundred-year flood plain as Dickerson alleges in paragraph 30 of his complaint, Klockner would have had to conduct tests and investigations that went beyond simply looking at the FEMA flood map, and superimposing a copy of the plat drawn to scale over the FEMA flood map. Therefore, while Dickerson presented evidence from FEMA indicating that sixty-two of his seventy-six lots might be in the one-hundred-year flood plain, he failed to present expert testimony showing what tests or investigations Klockner should have performed to determine the *true location* of the one-hundred-year flood plain. Accordingly, Dickerson failed to prove the material allegations set forth in his complaint regarding his cause of action for negligent misrepresentation.

In light of the foregoing, Dickerson's second and third assignments of error are overruled.

### III

Dickerson's fourth assignment of error states:

"The trial court erred by failing to find that defendants warranted the number of lots that would require flood insurance, and breached that warranty."

■ Causes of action for breach of warranty are typically brought against the seller of some product or commodity by a buyer who claims that there has been a breach of some express warranty made by the seller about the product or commodity, or a breach of some warranty implied by operation of law, like the implied warranties of merchantability or fitness for a particular purpose. See R.C. 1302.26 (express warranties), 1302.27 (implied warranty of merchantability), 1302.28 (implied warranty of fitness for a particular purpose). In these types of cases, the seller is accused of breaching an express or implied warranty covering the product *he is selling.* See, *e.g., Rogers v. Toni Home Permanent Co.* (1958), 167 Ohio St. 244, 4 O.O.2d 291, 147 N.E.2d 612 ("An express warranty is an affirmation of fact by the seller as to a product or commodity to induce the purchase thereof, on which affirmation the buyer relies in making the purchase").

Dickerson alleges that "Klockner breached his expressed warranties of fitness of Dickerson's lots for sale without flood insurance." Specifically, Dickerson asserts that Klockner warranted to him that only three or four of his lots would require flood insurance and that none would be outside the last section he was to develop. However, Klockner testified that when Dickerson asked him how many of his lots would require flood insurance, he told Dickerson, "I don't know." "I would guess five or more lots * * *." If Klockner's testimony is accurate, Klockner's statements to Dickerson fall short of being a "warranty," which is

defined as a "promise that a proposition of fact is true." Black's Law Dictionary (6 Ed. 1990) 1586. However, the trial court never definitively resolved this conflict in the testimony.

The trial court rejected Dickerson's breach-of-warranty claim on the grounds that the complaint and evidence produced at trial in support of Dickerson's claim against Klockner for misrepresenting the number of lots that would require flood insurance "sounded in tort, not in contract." We agree. Most notably, Klockner did not allegedly make express representations about lots that *he was selling*. Indeed, Dickerson has not cited any case recognizing a cause of action for breach of warranty where the defendant made and breached an express warranty about something that he was not selling, nor have we found a case that does.

Klockner allegedly made representations about the number of lots that would require flood insurance in the course of his professional dealings with Dickerson concerning the development of the subdivision. Dickerson testified repeatedly that he relied on Klockner's professional competence in accepting his alleged representations as true and acting upon them by continuing with the development. Accordingly, Dickerson's cause of action against Klockner for his alleged misrepresentation concerning the number of lots that would require flood insurance was properly viewed as sounding in tort, rather than contract. Dickerson brought a claim for professional negligence and negligent misrepresentation against Klockner, and the trial court found against him on both claims. While Dickerson has assigned as error the trial court's ruling on his negligent misrepresentation claim, which we have previously overruled, he has not appealed from the trial court's ruling on his professional negligence claim. Dickerson cannot circumvent his failure to present expert testimony on the proper standard of care for engineers and surveyors like Klockner by bringing his claim as one for breach of warranty, rather than for breach of a professional duty of care.

Dickerson's fourth assignment of error is overruled.

## IV

Dickerson's fifth assignment of error alleges:

"The trial court erred by dismissing plaintiff's second cause of action for fraud."

Dickerson argues that the trial court erred by failing to find that Klockner conspired with Parekh and officials from the city of Troy to cause him to believe that only a few of his lots were in Flood Zone A in order to induce Dickerson to grant Parekh an easement so that she could develop her property to the south of Dickerson's land. We disagree.

The tort of civil conspiracy has been defined as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 126, 512 N.E.2d 640, 645. "The malice involved in the tort is 'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.' " *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 475, 700 N.E.2d 859, 868, quoting *Pickle v. Swinehart* (1960), 170 Ohio St. 441, 443, 11 O.O.2d 199, 200, 166 N.E.2d 227, 229. An underlying unlawful act or tort is required before a party can prevail on a civil conspiracy claim. See *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 219–220, 687 N.E.2d 481, 496–497. An act of fraud can serve as the underlying unlawful act or tort. See *Williams, supra.* The elements of fraud are as follows:

" '(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.' " *Williams, supra,* citing *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 169, 10 OBR 500, 501–502, 462 N.E.2d 407, 408–409, quoting *Friedland v. Lipman* (1980), 68 Ohio App.2d 255, 22 O.O.3d 422, 429 N.E.2d 456, paragraph one of the syllabus.

▉ Here, there was sufficient evidence presented from which the trial court could have determined that Klockner was negligent, at most, in representing the number of lots on Dickerson's property that would require flood insurance and that Klockner did not make the representation with knowledge of its falsity or with such utter disregard and recklessness as to whether the representation was true or false that knowledge of its falsity should be inferred. For example, Klockner, himself, testified that he believed the portion of Dickerson's property represented by the bubble on the FEMA map listed in Flood Zone A was wrong. Klockner's testimony was corroborated by the testimony of Arthur Haddad, who testified that the bubble should not have existed on the FEMA map. In either a civil or criminal proceeding, the credibility of witnesses and the weight to be given their testimony is a matter primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

Accordingly, Dickerson's fifth assignment of error is overruled.

## V

Dickerson's first assignment of error states:

"The trial court erred, as a matter of law, by finding that none of the existing lots on plaintiff/appellant's property was in Flood Zone A as that phrase is defined by FEMA."

Even if it is assumed that most or all of the lots are, in fact, in the one-hundred-year flood zone, Dickerson's evidence has not established a case for negligent misrepresentation, breach of warranty, or fraud, for all of the reasons discussed in Parts II, III, and IV, above. Accordingly, this assignment of error has been rendered moot by our resolution of the previous assignments of error. See App. R. 12(A)(1)(c).

Dickerson's first assignment of error is overruled as moot.

## VI

All of Dickerson's assignments of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF and FREDERICK N. YOUNG, JJ., concur.