OPINION
Defendant-appellant and cross-appellee Steve Kappeler appeals from a judgment rendered against him on a construction contract. He contends that the trial court erred in granting judgment against him as an individual when he entered into the contract on behalf of Castlebrook, Inc. He further claims that the trial court erred in awarding judgment against him because the amount of the award was incorrectly calculated and was not supported by the evidence. Finally, he contends that the trial court erred by granting a motion for prejudgment interest filed by plaintiff-appellee and cross-appellant R.L. Johnson.
In his cross-appeal, Johnson contends that the trial court erred by making a $6,124.96 offset against the judgment. He further claims that the trial court erred by dismissing his claims against Castlebrook, Inc.
We conclude that the trial court did not err in granting judgment against Kappeler, individually, in calculating the amount of the judgment, or in awarding prejudgment interest. However, we do conclude that the trial court erred by dismissing Johnson's claims against Castlebrook, Inc.
Accordingly, that part of the judgment of the trial court dismissing Johnson's complaint against Castlebrook, Inc. is Reversed, the judgment of the trial court is Affirmed in all other respects, and this cause is Remanded for further proceedings consistent with this opinion.
 I
In 1999, Kappeler contacted Johnson to ask him if he would be interested in performing the electrical work for the construction of a carwash in Troy. Kappeler supplied Johnson with plans for a carwash located in Centerville to use as a general guide for preparing an estimate of costs.
In March, Johnson submitted an estimate of $28,944. Thereafter, Kappeler and Johnson had a meeting and entered into an oral contract for the electrical work. At the time of the agreement, the plans for the Troy facility had not been completed. Therefore, Johnson made Kappeler aware that the estimate was for the building alone, and did not include exterior items. At that time, Kappeler also informed Johnson that the configuration of the carwash had been changed, and that it would have additional elements.
In July, 1999, Johnson was given the plans for the carwash on the day he reported to the job site. During the course of the construction, Johnson reminded Kappeler that the extras and changes would increase the contract price beyond the original estimate. Kappeler agreed. The amount of the final bill prepared by Johnson at the completion of the construction under the contract was $44,480.11. Kappeler paid the sum of $10,000 toward the contract price. By a deed dated July 23, 1999, the carwash was conveyed to Castlebrook, Inc. Kappeler was an officer of the corporation at the time he contracted with Johnson.
When Kappeler failed to pay the remainder of the sum owed under the terms of the contract, Johnson filed suit against Kappeler and Castlebrook, Inc., both of whom filed a counterclaim for damages for delay.
Kappeler filed a motion for summary judgment, in which he argued that he could not be held individually liable for any damages owed to Johnson. He also moved for directed verdicts on the issue during trial. The trial court overruled Kappeler's requests. Johnson filed a motion for summary judgment against Kappeler and Castlebrook, Inc., which the trial court overruled.
Following a bench trial, the trial court found that Kappeler had contracted as an individual with Johnson, and entered judgment against Kappeler. The trial court made no ruling as to Castlebrook, Inc. From this judgment, Kappeler and Castlebrook, Inc. filed a timely notice of appeal.
This court, noting that the trial court had failed to enter judgment as to Castlebrook, Inc., and that Civ.R. 54(B) certification had not been issued, entered an order requiring Kappeler to show cause why the appeal should not be dismissed for lack of a final appealable order. Thereafter, the trial court entered an order, nunc pro tunc, dismissing all claims against Castlebrook, Inc.
As a threshold matter, we note that Kappeler's initial brief is thirty pages in length. Pursuant to Local Appellate Rule 2.2, "no initial brief of the appellant * * * shall exceed twenty-five pages in length * * * except by prior leave of court." In the interest of judicial economy, we proceed nevertheless to address the issues raised in Kappeler's brief, but we do ask that counsel observe this rule in the future.
 II
Kappeler's First Assignment of Error states as follows:
 THE TRIAL COURT ERRED WHEN IT OVERRULED DEFENDANT STEVEN KAPPELER'S MOTION FOR SUMMARY JUDGMENT, ERRED WHEN AT THE CLOSE OF THE PLAINTIFF-APPELLEE'S CASE WHEN IT OVERRULED STEVE KAPPELER'S MOTION FOR JUDGMENT, AND ERRED AT THE CLOSE OF ALL THE EVIDENCE WHEN IT OVERRULED STEVE KAPPELER'S MOTION FOR JUDGMENT WHICH IN EFFECT FOUND THAT STEVE KAPPELER COULD BE PERSONALLY LIABLE IN THIS MATTER.
Kappeler contends that the trial court should have granted his motions for summary judgment and directed verdict with regard to the issue of whether he could be held personally liable for damages. He argues that the record demonstrates that Johnson knew, or should have known, that he was contracting with a corporate entity rather than with Kappeler as an individual, so that judgment against him as an individual was improper.
"Generally, officers of a corporation will not be held individually liable on a contract which they enter into on behalf of the corporation unless they intentionally or inadvertently bind themselves as individuals." Dietz-Britton v. Smythe, Cramer Co. (2000),139 Ohio App.3d 337, 352, citation omitted. "Whether or not he is so bound, unless expressly stated, depends upon the intent of the parties." 12 Ohio Jurisprudence 3d (1995) 159, Business Relationships, Section 534. "The corporate officer has a responsibility to clearly identify the capacity in which he is dealing in a specific transaction." Id. The failure to do so can expose the officer to individual liability on the contract. Id. In other words, the officer must identify whether he is acting as an individual or as an officer of the corporation. Universal Energy Services, Inc. v. Camilly (May 3, 1991), Ashtabula App. No. 90-A-1533, unreported. The standard for granting summary judgment was set forth in one recent opinion of the Ohio Supreme Court as follows: "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370. The standard for granting a motion for directed verdict is similar. The court must construe the evidence most strongly in favor of the party against whom the motion is made. Civ.R. 50. If the court finds that upon any determinative issue reasonable minds could come to but one conclusion upon the submitted evidence, and that the evidence is adverse to the non- moving party, the court shall grant the motion. Civ.R. 50.
A review of the evidence, submitted at the time the motion for summary judgment was filed, which consisted of competing and conflicting affidavits, indicates that a genuine issue of material fact existed whether Kappeler had identified the project as belonging to the corporation, and whether Johnson had knowledge of this fact. Given this conflict in the evidence, the trial court did not err in denying summary judgment.
With regard to the motions for directed verdict, Kappeler argues that Johnson knew or should have known that he was dealing with the corporation, i.e. Castlebrook, Inc. with regard to the carwash project because: (1) all of the drawings, plans and specifications had the name "Castlebrook, Inc." on them;[1] (2) Johnson had Kappeler's business card, which identified him as president of the corporation; (3) Johnson knew that Kappeler was president of Castlebrook, Inc.; and (4) Johnson had signed a lien release for work done on the carwash project stating that it was Castlebrook, Inc. that was being released.
Conversely, Johnson argued that Kappeler did not hold himself out as representing the corporation with regard to this project and did not inform him that the project was owned by Castlebrook, Inc. He further argued that all of his prior business dealings were with Steve Kappeler as an individual and not with a corporation. Also, while the business card identified Kappeler as the owner of Castlebrook, Inc., there was no indication that the corporation owned the carwash. The corporation did not own the carwash at the time of contracting. Finally, Johnson argued that even if the blueprints and the lien release contained the name Castlebrook, Inc., he was not aware that the carwash was being built for the corporation rather than for Kappeler individually.
In this case, there was conflicting evidence at trial regarding whether Kappeler informed Johnson that he was entering into the contract on behalf of the corporation and whether Johnson was made aware that he was dealing with the corporation. "In either a civil or criminal proceeding, the credibility of witnesses and the weight to be given their testimony is a matter primarily for the trier of fact." Dickerson Internationale, Inc. v. Klockner (2000), 139 Ohio App.3d 371, 380, citing State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Given that the burden is on the corporate officer to inform the contracting party that he is acting on behalf of the corporation, and that Johnson's testimony indicates that this did not happen, the trial court could reasonably find that Kappeler, even if inadvertently, bound himself individually on the contract. Accordingly, the First Assignment of Error is overruled.
 III
Kappeler's Second Assignment of Error provides:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT OVERRULED BOTH DEFENDANTS- APPELLANTS' MOTIONS AT THE CLOSE OF PLAINTIFF-APPELLEES CASE FOR JUDGMENT, AND ERRED WHEN IT OVERRULED BOTH DEFENDANTS-APPELLANTS' MOTIONS AT THE CLOSE OF THE ENTIRE TRIAL.
In this Assignment of Error, Kappeler contends that the trial court erred by failing to grant his motions for directed verdict. Specifically, he argues that the trial court should have granted the motions because Johnson failed to prove that he was entitled to recover damages under a quantum meruit theory by failing to establish the reasonable value of his services.
This court has previously addressed the issue of when an action for quantum meruit will lie in Wild Fire, Inc. v. Laughlin (Mar. 9, 2001), Clark App. No. 2000 CA 51, unreported, wherein we stated:
 When a court finds that a party has been unjustly enriched by an aggrieved party, the court adopts a legal fiction, quasi contract, to provide the aggrieved party a remedy, which is a claim for quantum meruit. Generally, "a claim for unjust enrichment lies whenever a benefit is conferred by plaintiff upon a defendant with knowledge by the defendant of the benefit and retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." The court may impose civil liability in a situation where one party retains the benefit from the labors of the other party. In order to remedy this unjust enrichment, "the law implies a promise to pay a reasonable amount for services in the absence of a specific contract." Recovery under quantum meruit should be for the value to the Plaintiff of the use of the property or benefit conferred.
However, Ohio law clearly states:
 that an equitable action in quasi contract for unjust enrichment will not lie when the subject matter of that claim is covered by an express contract or a contract implied in fact. The mere fact that issues exist as to the creation of the contract or the construction of its terms does not alter this rule.
 Thus, unless fraud or illegality occur, a party to an express agreement, which contains a provision governing the allegedly inequitable conduct, may not bring an unjust enrichment claim.
Id., citations omitted.
A review of the trial court's decision reveals that the trial court specifically rejected Johnson's claim that he was entitled to recover under a quantum meruit theory. Instead, the trial court made an express finding that the parties had entered into an oral contract, and that Johnson was entitled to recover damages based upon that contract, not upon the basis of unjust enrichment. Thus, having found that the services for which Johnson sought relief were covered by the contract, the trial court excluded the claim for damages under quantum meruit. To the extent that the oral contract did not specify consideration for certain services that were added to the scope of the work, the contractor was entitled to reasonable compensation, which the trial court awarded. When an express contract covers the subject matter of a quantum meruit claim, the quantum meruit claim must be rejected.
Therefore, the fact that the trial court overruled Kappeler's motions for directed verdict with regard to the quantum meruit claim is of no consequence. Kappeler was not harmed thereby because Johnson did not recover for that claim. Therefore, any error is harmless, and this Assignment of Error is overruled.
 IV
The Third Assignment of Error states:
 THE TRIAL COURT ERRED WHEN IT DID NOT GIVE PROPER CREDIT TO EITHER DEFENDANT-APPELLANT AGAINST THE TOTAL AMOUNT CLAIMED BY THE PLAINTIFF-APPELLEE.
Kappeler contends that the trial court failed to properly compute the damages owed to Johnson because it failed to offset the judgment by crediting him with the following: (1) $4,500 for a panel control box; (2) $6,124.96 for additional work in the parking lot which was billed and paid; (3) $10,000 in payments made by Kappeler on the contract; and (4) $8,000 for the cost to redo a portion of the work done by Johnson.
With regard to the claim that the judgment should have been offset by the amounts of $6,124.96 for parking lot work and $10,000 for payments made by Kappeler on the contract, from our reading of the trial court's decision, we conclude that the judgment was, in fact, offset by these amounts. Therefore, this argument is without merit.
We next turn to the Kappeler's claim that the judgment should have been offset by $4,500. Kappeler contends that the contract required Johnson to install a panel control box. However, Johnson did not supply the box, which was ultimately purchased elsewhere.
The trial court found that the control box was not included in the contract price. There is evidence in the record to support this finding. Johnson testified that Kappeler had originally indicated that the control box was going to be supplied by a third party, and that therefore, the estimate did not include a charge for the box. Johnson further testified that although he and Kappeler subsequently discussed whether Johnson could supply the box at a lower cost, it was determined that the third party had the lowest price. Therefore, he testified that the box was never included in the contract. Kappeler testified to the contrary.
Again, the trial court as the trier of fact was in the best position to determine the credibility of the witnesses and the weight to be given their testimony. We cannot say, after reviewing the transcript, that the trial court erred by finding Johnson's testimony more credible in this regard. Therefore, we conclude that the trial court did not err when it did not offset the judgment by the amount of the control box.
Finally, we turn to Kappeler's claim that the judgment should have been offset by the amount of $8,000. Kappeler contends that the record supports a finding that Johnson failed to complete portions of this project in a workmanlike manner and that it would cost $8,000 to remedy the problems. Specifically, the expert who testified on Kappeler's behalf testified that he would have performed the electrical work in a different manner than Johnson. However, he admitted that Johnson's work satisfied the applicable codes for electrical work, and that any differences in the work performed by Johnson and the expert was more an issue of code interpretation than quality.
The trial court found that the work performed by Johnson was done in a workmanlike manner and that it was approved by city inspectors. The court further found that the evidence presented by Kappeler regarding whether Johnson performed the work in a workmanlike manner went more to style than any substantive problem. Therefore, the court found that Kappeler was not entitled to the claimed $8,000 offset. We agree.
We conclude that the record supports the trial court's finding with regard to the claimed offsets. Therefore, the Third Assignment of Error is overruled.
 V
Kappeler's Fourth Assignment of Error provides as follows:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FINDING FOR THE PLAINTIFF-APPELLEE WHEN SAID DECISION ENTRY AND JUDGMENT ENTRY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Kappeler contends that the judgment of the trial court is not supported by the evidence because the trial court failed to disclose how it arrived at the amount of the judgment awarded to Johnson.
A judgment of a trial court will not be reversed on appeal as being against the manifest weight of the evidence if it is supported by some competent, credible evidence going to all of the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. The appellate court is directed by the presumption that the findings of the trier of fact are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79. The trier of fact is in the best position to observe witnesses and weigh their credibility. Id.
The trial court found that the total amount owed to Johnson under the terms of the contract was $44,480.11, based upon testimony and documentary evidence. The trial court then credited Kappeler with the sums of $6,124.96 for the parking lot costs which were paid, and an additional $10,000 that had been paid on the contract. This reduced the monies owed under the contract to $28,355.15. The trial court then further reduced the amount of the judgment by $7,142.90 for damages for delays caused by Johnson. The trial court awarded a net judgment to Johnson in the amount of $21,212.25.
We find that the record supports this calculation. There is evidence in the form of testimony and documents demonstrating that the total cost of material and labor provided by Johnson under the contract was $44,480.11. There was further evidence that Kappeler was entitled to an offset of $23,267.86 for payments and damages for delay. We find no mathematical error in the trial court's calculation, and find that the determination of damages is supported by the evidence.
The Fourth Assignment of Error is overruled.
 VI
Kappeler's Fifth Assignment of Error states:
 THE TRIAL COURT ERRED WHEN IT GRANTED PRE-JUDGMENT INTEREST IN FAVOR OF PLAINTIFF-APPELLEE.
Kappeler contends that the trial court erred by granting Johnson's motion for prejudgment interest. He argues that in order to award prejudgment interest pursuant to R.C. 1343.03(A), the sum owed must be unliquidated or there must be a lack of good-faith effort to resolve the dispute. Kappeler argues that Johnson failed to meet either of these requirements.
R.C. 1343.03 provides for a trial court's award of prejudgment interest. R.C. 1343.03(A) states in pertinent part:
 [W]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, * * *
This statute makes no reference to liquidated or unliquidated sums or to good-faith settlement efforts.[2] The Supreme Court has held the liquidated or unliquidated distinction to be irrelevant to the issue of whether to award prejudgment interest. Heinz v. Steffen (1996),112 Ohio App.3d 174, 187, citing Royal Elec. Constr. Corp. v. Ohio State Univ. (1995), 73 Ohio St.3d 110. Instead, the test for whether prejudgment interest is properly awarded is whether the aggrieved party has been fully compensated. Id. "`[P]rejudgment interest does not punish the party responsible for the underlying damages * * *, but, rather acts as compensation and serves ultimately to make the aggrieved party whole. Indeed, to make the aggrieved party whole, the party should be compensated for the lapse of time between accrual of the claim and judgment.'" Jeffrey B. Peterson Associates v. Dayton Metropolitan Housing Authority (July 21, 2000), Montgomery App. No. 17306, unreported, citation omitted.
A trial court's decision to allow prejudgment interest will be upheld absent an abuse of discretion. Westbrock v. Western Ohio Health Care Corp. (2000), 137 Ohio App.3d 304, 324, citation omitted. In this case, we cannot say that the trial court abused its discretion by awarding prejudgment interest.
The Fifth Assignment of Error is overruled.
 VII
Johnson's First Assignment of Error on cross-appeal is as follows:
 THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLEE'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT STEVE KAPPELER AND DEFENDANT CASTLEBROOK, INC.
Johnson contends that he should have been awarded judgment against Castlebrook, Inc. on his unjust enrichment claim because the corporation benefited from the work he performed on the carwash.
Kappeler is personally liable on the verbal contract he entered into with Johnson. However, it is clear that Castlebrook, Inc., as owner of the carwash, has benefited from Johnson's work on the carwash. Thus, although Castlebrook, Inc. has no liability pursuant to the contract, it may be liable based on the theory of quantum meruit. Therefore, the trial court erred to the extent that it dismissed all claims against Castlebrook, Inc.
However, the primary liability in this case rests on Kappeler as a party to the contract. Castlebrook, Inc.'s liability, if any, is secondary, since it arises, if at all, not out of a contract, but out of the fact that it would be inequitable, under the circumstances, to allow it to retain the benefit of work performed at the expense of another. Therefore, if Johnson is able to collect the entire amount of his judgment against Kappeler, he can have no claim against Castlebrook, Inc. But to the extent he is unable to collect against Kappeler, and to the extent that Castlebrook, Inc. has benefited from the work performed by Johnson, Johnson should be entitled to collect from the corporation.
Any amounts that Johnson can recover from Kappeler should be offset against the amount that it would take to make Johnson whole, since his recovery against Kappeler will reduce the amount that his work on the project has cost him. Johnson's net cost of the work-that is, his cost less amounts recovered from Kappeler-should then be compared with the economic benefit of the work to Castlebrook, Inc. and the lesser of those two amounts would be the proper amount to award against Castlebrook, Inc. on a theory of quantum meruit. An award under quantum meruit should not be greater than the amount needed to make the claimant whole, but neither should it be greater than the value of the benefit to the person against whom the claim is being made.
On remand, the trial court should enter judgment against Castlebrook, Inc. based upon the claim of quantum meruit. But that judgment should be net of any amounts that Johnson can recover against Kappeler.
Johnson's First Assignment of Error on cross-appeal is sustained.
 VIII
Johnson's Second Assignment of Error on cross-appeal states as follows:
 THE TRIAL COURT ERRED WHEN GIVING CREDIT TO APPELLANT STEVE KAPPELER FOR AN INVOICE IN THE AMOUNT OF $6,124.96.
Johnson contends that the invoice for the parking lot lights, in the sum of $6,124.96, was billed and collected separately from the rest of the work provided for by the contract. Therefore, he argues that the trial court should not have credited this amount against the amount of the judgment awarded to him.
It is not clear from the record, but it appears that at least portions of the final bill contained costs pertaining to the parking lot lights, and that some of those costs may have also been included in the invoice for $6,124.96. Therefore, it appears that Johnson may have double-billed Kappeler for work performed on the parking lot. From our review of evidence in the record, we cannot say that the trial court erred by reducing the amount awarded to Johnson by the amount of this invoice. Accordingly, this Assignment of Error is overruled.
 IX
All of Kappeler's Assignments of Error, and Johnson's Second Assignment of Error are overruled. Johnson's First Assignment of Error is sustained. Therefore, that part of the judgment of the trial court dismissing Johnson's claims against Castlebrook, Inc. is Reversed, the judgment of the trial court is Affirmed in all other respects, and this cause is Remanded for further proceedings consistent with this opinion.
WOLFF, P.J., and BROGAN, J., concur.
[1] A review of the blueprints reveals that eight pages of general drawings had the name "Castlebrook, Inc.'s Waterworks" written on them, but that eight pages of detailed schematics for the mechanical systems of the car wash included no reference to the corporation.
[2] The good-faith settlement requirement is contained in R.C.1343.03(C), which is not applicable to this case.