[Cite as *Carey v. Down River Specialties, Inc.*, 2016-Ohio-4864.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 103595**

---

## JOSEPH A. CAREY, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## DOWN RIVER SPECIALTIES, INC.

DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-820274

**BEFORE:** E.T. Gallagher, J., Kilbane, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** July 7, 2016

**ATTORNEYS FOR APPELLANTS**

William Louis Tabac
P.O. Box 780
Parkman, Ohio 44080

Daniel Thiel
The Law Office of Daniel Thiel, L.L.C.
75 Public Square
Suite 650
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEE**

Lester S. Potash
Lester S. Potash, Attorney at Law
25700 Science Park Drive
Suite 270
Cleveland, Ohio 44122

EILEEN T. GALLAGHER, J.:

**{¶1}** Plaintiffs-appellants, Joseph A. Carey and K.K. Tricks, L.L.C. (collectively "Carey"), appeal a judgment in favor of defendant-appellee, Down River Specialties, Inc. ("Down River"), on Carey's contract claims against Down River. Carey also appeals the trial court's judgment in favor of Down River on its counterclaims against Carey. Carey raises the following two assignments of error:

> 1. The trial court erred when it overlooked and failed to address plaintiffs-appellants' contract claims that defendant-appellee breached the lease in issue and that plaintiffs-appellants were therefore entitled to suspend their performance, terminate the lease, and recover as damages the funds they expended in reliance on the lease.
>
> 2. The trial court erred when, by overlooking and failing to address plaintiffs'-appellants' contract claims that the defendant-appellee breached the lease, which entitled plaintiffs-appellants to terminate the lease and suspend their performance, it concluded that plaintiffs-appellants breached the lease and that defendant-appellee was entitled to recover damages from plaintiffs-appellants on its counterclaim.

**{¶2}** We find no merit to the appeal and affirm.

## I. Facts and Procedural History

**{¶3}** In October 2010, Carey entered into a commercial lease with Down River to occupy and use a building located at 620 Frankfort Avenue in Cleveland, Ohio, as either a nightclub or an adult cabaret. The lease agreement contained a 90-day purchase option and a 48-month purchase option. If Carey did not exercise either of the purchase options, the agreement operated solely as a commercial lease agreement.

{¶4} Prior to signing the lease, Carey and his attorney negotiated with Michael Tritola ("Tritola"), a principal of Down River. When the parties executed the lease agreement, Carey asked Tritola if Down River had a certificate of occupancy needed to operate the premises as an adult cabaret. Tritola advised Carey that the certificate of occupancy was destroyed by a prior tenant, but he (Tritola) "might have a copy somewhere." (Tr. 153.) Tritola advised Carey that he could operate an adult cabaret in the leased space without a certificate since adult entertainment was a "grandfathered use" of the property and had been used for that purpose for the previous 25 years. Despite the missing certificate of occupancy, Carey signed the parties' agreement and made a $200,000 down payment.

{¶5} At Carey's request, Tritola endeavored to procure another certificate of occupancy from the city of Cleveland, even after the lease was signed and Carey had possession of the building. Unfortunately, Tritola encountered difficulty obtaining the certificate. He ultimately filed a petition for mandamus from this court, and the city subsequentlty issued the requested certificate.

{¶6} Carey operated a nightclub for two and a half years before the city of Cleveland finally issued the certificate of occupancy for the building. During that time, he was never cited by any government agency for failing to have a certificate of occupancy. Nevertheless, by the time the city finally issued the certificate, Carey's business was failing. Down River reduced Carey's monthly rent obligation by half in an effort to help Carey's business succeed. However, after two months, Carey was unable

to pay the rent, property taxes, and insurance as required by the parties' agreement. As a result, Down River instituted eviction proceedings against Carey. Carey voluntarily quit the premises and returned the keys to Down River.

{¶7} Carey subsequently filed a complaint against Down River, alleging breach of contract, breach of warranty, and fraud. Carey alleged he was unable to operate the nightclub as an adult establishment because Down River failed to deliver the necessary certificate of occupancy. He further alleged that Down River's failure to deliver a valid certificate of occupancy was "a failure of the consideration for which the Plaintiffs bargained for under the Lease." (Complaint ¶ 7.) Accordingly, Carey claimed he was entitled to rescind the contract and recover damages in the amount of $705,000, which represented the $200,000 down payment and two and a half years of rent.

{¶8} Following a bench trial, the court issued a written opinion in which it discussed Carey's fraud claim and request for rescission, but provided no analysis of Carey's breach of contract or breach of warranty claims. After concluding there was no evidence of fraud, the court entered judgment in favor of Down River on all of Carey's claims and in favor of Down River on its counterclaim for damages. The court entered judgment against Carey in the amount of $10,336.53. Carey subsequently filed a motion for a new trial, which was denied. Carey now appeals the trial court's judgment.

## II. Law and Analysis

{¶9} In the first assignment of error, Carey argues the trial court ruled on his fraud claim and rejected his request for rescission but failed to address the breach of contract

and warranty claims alleged in the complaint. However, if the court truly ignored Carey's breach of contract and warranty claims, there would be no final appealable order. The trial court's judgment entry specifically states that "the Court finds that the Defendant is entitled to judgment in its favor on *all* of the Plaintiffs' claims." (Order and Opinion at 5.) Thus, the court did not abandon or ignore any of Carey's contract claims. Rather, it expressly found that Down River did not commit fraud and implicitly found that Down River did not breach the parties' lease agreement.

{¶10} Civ.R. 52, which governs judgments where the court acts as the trier of fact, provides, in relevant part:

> When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * *, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.

{¶11} Here, the trial court gave a detailed analysis of Carey's fraud claim and request for rescission and concluded that he failed to prove fraud and was not entitled to rescind the parties' contract. Carey does not dispute these findings. Therefore, the court's judgment on Carey's fraud claim is affirmed.

{¶12} Although the court did not provide a detailed analysis of Carey's breach of contract and warranty claims, it generally found in favor of Down River on all of Carey's claims. The trial court's judgment states, in relevant part:

> Unfortunately, the Plaintiff's business venture was not successful. However, that mere fact does not give rise to a fraud claim or entitle the Plaintiff to recision [sic] of a contract that they knowingly and voluntarily entered in to [sic]. Judgment shall be entered in favor of the Defendant on *all* of the Plaintiffs' claims.

(Emphasis added.) Because Carey did not request additional findings of fact or conclusions of law regarding his breach of contract claims, the court was not required to provide any further written analysis of those claims.

{¶13} Where the trial court awards a general judgment in favor of one party, the court complies with Civ.R. 52 where the record, along with the court's order, provides an adequate basis on which to dispose of all the claims presented. *Stone v. Davis*, 66 Ohio St.2d 74, 84-85, 419 N.E.2d 1094 (1981) ("If the court's ruling or opinion, together with other parts of the trial court's record, provides an adequate basis upon which an appellate court can decide the legal issues presented, there is * * * substantial compliance with Civ.R. 52."). Therefore, we review the record to determine whether the court had an adequate basis to find in favor of Down River on all of Carey's claims.

## A. Breach of Contract

{¶14} As previously stated, the court did not specifically discuss Carey's breach of contract claim in its journal entry. To establish a claim for breach of contract, the plaintiff must show the existence of a contract, performance by the plaintiff under the terms of that contract, breach by the defendant, and damage or loss to the plaintiff. *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 10, 771 N.E.2d 874 (10th Dist.2002). Contract interpretation, which is a question of law, is subject to de novo review. *Cleveland-Akron-Canton Advertising Coop. v. Physician's Weight Loss Ctrs. of Am.*, 184 Ohio App.3d 805, 2009-Ohio-5699, 922 N.E.2d 1012, ¶ 9 (8th Dist.).

**{¶15}** Although Carey argues in his appellate brief that Down River breached some kind of warranty, Carey did not allege a separate count for breach of warranty or even mention the term "warranty" in the complaint. A "warranty," is "'[a] promise that a proposition of fact is true.'" *Dickerson Internationale, Inc. v. Klockner*, 139 Ohio App.3d 371, 378, 743 N.E.2d 984 (2d Dist.2000), quoting *Black's Law Dictionary* 1586 (6th Ed.1990). A warranty may also be an "express or implied promise that something in furtherance of [a] contract is guaranteed by one of the contracting parties." *Wee Care Child Ctr., Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 13AP-1004, 2014-Ohio-2913, ¶ 37, quoting *Black's Law Dictionary* (7th Ed.1999) 1581.

**{¶16}** When interpreting contracts, "[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. When the terms of a contract are unambiguous, courts will not create a new contract by finding an intent not expressed in the clear language employed by the parties. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992).

**{¶17}** "The parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000), quoting 11 Williston, *Contracts*, Section 33:4, at 569-570 (4th Ed.1999).

**{¶18}** The parol evidence rule is not a rule of evidence, but a rule of substantive contract law employed as an aid to judicial interpretation. *Ed Schory & Sons, Inc. v. Francis*, 75 Ohio St.3d 433, 439, 662 N.E.2d 1074 (1996). As a policy matter, the rule is designed to protect the integrity of written agreements and thereby encourage parties to put all contractual terms in writing. *Galmish* at 27.

**{¶19}** Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning, will extrinsic evidence be considered in an effort to give effect to the parties' intentions. *Bellman v. Am. Internatl. Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, ¶ 7.

**{¶20}** Carey argues Down River breached the parties' contract because it failed to deliver a certificate of occupancy for the premises, which he asserts was a material term in the parties' agreement. However, there was no provision in the parties' written agreement that required Down River to provide or obtain a certificate of occupancy for Carey. Section nine of the parties' agreement states, in relevant part:

> The Demised Premises can and shall be used solely for the operation of a tavern, bar, restaurant, or grand fathered [six] adult entertainment use (as defined by the City of Cleveland zoning code and Ohio Code) with the incidental privilege of the sale of alcoholic beverages, and for no other purpose.

Despite this clear and unambiguous language, Carey contends this provision created a promise that Down River would provide a certificate of occupancy. However, nothing

in the contract could lead one to that conclusion. For example, section nine states, in relevant part:

> Lessee shall be given two sets of keys from the Lessor. If additional keys are required by Lessee, the cost thereof shall be borne by the Lessee.

**{¶21}** This language specifically states that the lessor, Down River, was obliged to deliver two sets of keys to Carey. Yet, that section does not state that Down River was required to deliver a certificate of occupancy. Further, section 1(D) specifically imposes a duty on Down River to transfer its liquor license to Carey. Section 1(D) states, in relevant part:

> In addition to leasing the Demised Premises, as consideration for the payments and performance obligations detailed herein, Lessor shall make good faith efforts to allow transfer of its liquor license to Lessee during the term of this agreement. Lessee shall execute any and all applications and other documents required to cause the transfer of all liquor licenses presently held at the Demised Premises to be transferred to Lessee. Lessor shall continue to cooperate in all material ways with the liquor license transfer process. Lessor shall further execute the Management Agreement in Exhibit C and deliver the same to Lessee. Said Liquor License shall remain a secured asset of Lessor via UCC filing until Lessee shall either transfer the Liquor License back to Lessor at the end of the Lease Term or exercise the Purchase Option and successfully complete the closing of said purchase.

**{¶22}** Although the parties' agreement clearly and unambiguously imposed obligations on Down River to deliver two sets of keys and a liquor permit to Carey, there is no provision requiring it to deliver a certificate of occupancy. It is undisputed that no certificate of occupancy was produced before the parties executed their agreement. If the parties intended Down River to be responsible for providing or obtaining a certificate of occupancy, they could have included such a provision in their agreement. Indeed, Carey was represented by counsel in the contract negotiations, and his counsel could have insisted that such a term be included in the contract if that was Carey's intention.

**{¶23}** As previously stated, section nine of the parties' agreement provided that Carey could operate the premises as a tavern, nightclub, or as a "grand fathered [sic] adult entertainment use (as defined by the City of Cleveland zoning code and Ohio Code)." The evidence at trial established that the property had an "established use" designation that allowed the property to be used for adult entertainment under the Cleveland building and zoning codes. Therefore, Down River made no false representations regarding the building's "established" or "grandfathered" use. The property was delivered in the condition described in the parties' lease agreement.

**{¶24}** Carey nonetheless contends Down River breached the parties' agreement by failing to provide a certificate of occupancy for the building. However, when asked whether Tritola represented that he had a certificate of occupancy for the building, Carey admitted Tritola had informed him that a prior tenant destroyed the certificate of occupancy, but that "he might have a copy somewhere." (Tr. 153.)

**{¶25}** Carey further testified at trial that the certificate of occupancy issue did not arise until the time he signed the agreement because he assumed a commercial building would have a certificate of occupancy. (Tr. 152.) When asked whether Carey mentioned the certificate of occupancy to Tritola during negotiations, he testified:

> Well, I don't know that that specific term came up. I was buying a business. And I'm a licensed general contractor in two states. I just assumed that if you would have a commercial building that you would have a certificate of occupancy. I don't know where in the world that you don't get one if you have a business.

(Tr. 152.)

**{¶26}** Under the doctrine of caveat emptor, also know as "buyer beware," a purchaser of commercial real estate has no just cause for complaint where the purchaser had an opportunity to investigate the property without hindrance or concealment by the vendor, even though there may be misstatements or misrepresentations. *Layman v. Binns*, 35 Ohio St.3d 176, 177, 519 N.E.2d 642 (1988).

**{¶27}** Thus, it was incumbent upon Carey to independently verify the permitted uses and occupancy requirements for the property before entering the agreement. Tritola advised Carey that he could operate an adult cabaret without a certificate of occupancy because it was an "established use" under the city's building and zoning codes. Yet, Carey never investigated the permitted uses of the building. At trial he testified:

> Q: Did you ever check to see or did you ever have your lawyer check to see before you signed the agreement what the permitted uses of the premises were?
>
> A: No, I don't think that I did check.
>
> \*    \*    \*

Q: * * * You knew that the building had permitted uses; did you not?

A: No, it was an ongoing business. I don't know. I assumed there probably were.

Q: All right. Did you ask your lawyer to check this out?
A: No, we didn't check. * * * I just assumed that because there were a number of establishments of the type all around that there wouldn't be an issue but I did not check.

(Tr. 230.)

{¶28} Moreover, Carey failed to prove damages caused by the alleged breach of contract, breach of warranty, or fraud claims. Nothing prevented Carey from operating his business in the leased premises. Indeed, Carey operated a nightclub on the property for two and a half years. Although building inspectors and police inspected the premises, including all applicable certificates and permits, Carey was never cited or shut down for failing to have a certificate of occupancy.

{¶29} Carey's assertion that his business would have been more profitable if he operated it as an adult cabaret, is purely speculative. Compensatory damages must be shown with certainty, and damages that are too speculative are not recoverable. *Moton v. Carroll*, 10th Dist. Franklin No. 01AP-772, 2002 Ohio App. LEXIS 505 (Feb. 12, 2002). Although lost profits need not be proven with mathematical precision, the evidence and theory of the case must provide the finder of fact with known, reliable factors that can reasonably guide the computation of damages. *McNulty v. PLS Acquisition Corp.*, 8th Dist. Cuyahoga Nos. 79025, 79125, and 79195, 2002-Ohio-7220, ¶

87, fn. 14. Therefore, Carey failed to establish proof of any damage caused by the alleged breach of contract, breach of warranty, or fraud.

{¶30} Carey does not contest the trial court's conclusion that Down River did not commit fraud when it represented that Carey could use the property for adult entertainment. Indeed, Down River had a court order documenting the fact that adult entertainment was a permitted use of the property. The evidence showed that Carey was given every opportunity to inspect the building, the existence or nonexistence of a certificate of occupancy, and whether he could have legally operated an adult cabaret without a certificate of occupancy as suggested by Tritola. No misrepresentations were made, and we find no evidence that Down River breached the parties' agreement or any alleged warranty. Therefore, the record supports the court's general conclusion that Down River did not breach the parties' contract.

{¶31} The first assignment of error is overruled.

## B. Down River's Counterclaims

{¶32} In the second assignment of error, Carey argues the trial court erred in finding that he breached the parties' agreement and in awarding Down River damages.

{¶33} Carey contends that because Down River breached the lease by failing to provide a certificate of occupancy, he was justified in suspending his performance by ceasing to pay rent and other expenses. However, as previously explained, Down River did not breach the contract by failing to provide a certificate of occupancy at the commencement of the lease term. It performed its obligations under the agreement by

delivering possession of the premises to Carey for use as a nightclub. Therefore, Carey was not excused of his obligations under the lease, and the trial court properly found that he breached the lease agreement. Carey does not contest the amount of damages the trial court awarded to Down River.

**{¶34}** Therefore, the second assignment of error is overruled.

**{¶35}** The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
MELODY J. STEWART, J., CONCUR